1                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK
2

3    ------------------------------------X
                                        :
4    UNITED STATES OF AMERICA,          :   15-CR-727 (JSR)
                                        :
5                                       :
                      v.                :   500 Pearl Street
6                                       :   New York, New York
     JAKACKI, et al.,                   :
7                                       :   October 29, 2015
                      Defendants.       :
8    ------------------------------------X

9          TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
            BEFORE THE HONORABLE JAMES C. FRANCIS
10            CHIEF UNITED STATES MAGISTRATE JUDGE

11   APPEARANCES:

12   For the Government:        UNITED STATES ATTORNEY
                                BY: SIDHARDHA KAMARAJU, ESQ.
13                                  LOUIS PELLEGRINO, ESQ.
                                ASSISTANT U.S. ATTORNEY
14                              One St. Andrew's Plaza
                                New York, New York 10007
15
     For Defendant/Cybulski:   JOHN RAPAWY, ESQ.
16                             Louis Grandelli, PC
                               90 Broad Street
17                             New York, New York 10004

18   For Defendant/L. Jakacki: CHRISTOPHER FLOOD, ESQ.
                               Federal Defenders of New York
19                             52 Duane Street
                               New York, New York 10007
20
     For Defendant/M. Jakacki: JOHN FRANCIS KALEY, ESQ.
21                             Doar, Rieck, Kaley & Mack
                               217 Broadway
22                             New York, New York 10007

23   Court Transcriber:        SHARI RIEMER, CET-805
                               TypeWrite Word Processing Service
24                             211 N. Milton Road
                               Saratoga Springs, New York 12866
25


     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service

2

1          THE COURT: This is an unsealing in <u>United States v.</u>

2   <u>Lilian Jakacki, MW & W Global Enterprises, European Apothecary</u>

3   <u>and Robert Cybulski</u>.  The case is assigned to Judge Rakoff.

4          THE CLERK:  <u>US v. Robert Cybulski, Marcin Jakacki</u>

5   <u>and William Jakacki</u>.

6          Counsel, please state your name for the record

7   starting with the Government.

8          MR. KAMARAJU: Good afternoon, Your Honor.  Sid

9   Kamaraju and Louis Pellegrino on behalf of the Government, and

10  with us at counsel's table is Special Agent James. C. Mannick

11  from the DEA.

12         THE COURT: Good afternoon.

13         MR. RAPAWY:  Appearing for Mr. Robert Cybulski, John

14  Rapawy.  Good afternoon, Your Honor.

15         THE COURT: Good afternoon.

16         MR. KALEY:  Good afternoon, Your Honor.  For Marcin

17  Jakacki, John Kaley.  I understand I'm going to be appointed

18  to represent Mr. Jakacki.

19         THE COURT: Good afternoon.

20         MR. FLOOD:  Your Honor, good afternoon.  Christopher

21  Flood, Federal Defenders of New York on behalf of Lilian

22  Jakacki.

23         THE COURT: Good afternoon.  Ladies and gentlemen,

24  I'm Judge Francis.  The purpose of this proceeding is to

25  inform you of certain rights that you have, to inform you of

3

1    the charges against you, to consider whether counsel should be

2    appointed for you and to decide under what conditions you

3    should be released.

4           Can I have the time and day of arrest, please?

5           MR. KAMARAJU: Yes, Your Honor.  With respect to

6    Robert Cybulski, he was arrested yesterday at approximately

7    7:35 p.m.  Lilian Jakacki was arrested yesterday at

8    approximately 5:20 p.m. and Marcin Jakacki was arrested

9    yesterday at approximately 5:15 p.m.

10                      [Pause in proceedings.]

11          THE COURT: Ladies and gentlemen, you have the right

12   to remain silent.  You're not required to make any statements.

13   Even if you have made any statements to the authorities you

14   need not make any further statements.  Anything that you do

15   say can be used against you.

16          You have the right to be released either

17   conditionally or unconditionally pending trial unless I find

18   that there are no conditions that would reasonably assure your

19   presence in court and the safety of the community.

20          You have the right to be represented by counsel

21   during all court proceedings including this one and during all

22   questioning by the authorities.  If you cannot afford an

23   attorney I'll appoint one today to represent you.

24                      [Pause in proceedings.]

25          THE COURT: Ms. Jakacki, can you raise your right

4

1  hand, please?  Do you swear the information contained in this

2  financial affidavit is true so help you God?

3          DEFENDANT L. JAKACKI:  Yes, I do.

4          THE COURT: Mr. Flood, is there anything else you'd

5  like to add with respect to this application?

6          MR. FLOOD: No, Your Honor, it's based on Ms.

7  Jakacki's best estimate.  We don't take a position.

8          THE COURT: Very well.  I will appoint Mr. Flood to

9  represent you for purposes of these proceedings.  However,

10 going forward it will be necessary for you to retain counsel.

11         DEFENDANT L. JAKACKI: Yes, Your Honor.

12                    [Pause in proceedings.]

13         THE COURT: Mr. Jakacki, raise your right hand,

14 please.  Do you swear the information contained in this

15 financial affidavit is true so help you God?

16         DEFENDANT M. JAKACKI: Yes.

17         THE COURT: Similarly, I will appoint Mr. Kaley to

18 represent you only for these proceedings after which it will

19 be necessary for you to retain counsel.

20         I note that Mr. Cybulski has retained counsel.

21                    [Pause in proceedings.]

22         THE COURT: There are five counts in the indictment

23 that charges you.  Count 1 applies to all defendants and it

24 charges conspiracy to distribute narcotics in violation of

25 Title 21 of the United States Code Section 846.  If convicted

1    on that count you would be subject to a term of imprisonment

2    of up to 20 years, a fine of up to $1 million and $100 special

3    assessment.

4            Count 3, 4 and 5 all relate to money laundering or

5    conspiracy to commit money laundering in violation of Title 18

6    of the United States Code Section 1956(h).

7            Ms. Jakacki is named in all three counts and Mr.

8    Jakacki is named in Count 3.  If convicted on those counts --

9    in any of those counts you would be subject to a term of

10   imprisonment of up to 20 years, a fine of up to $500,000 and

11   $100 special assessment.

12           Count 2 charges conspiracy to commit healthcare

13   fraud and only Ms. Jakacki is named in that count.  If

14   convicted you would be subject to a term of imprisonment of up

15   to 10 years, a fine of up to $250,000 and $100 special

16   assessment.

17           Finally, Count 6 again which charges only Ms.

18   Jakacki charges a violation of Title 18 of the United States

19   Code Section 371 which makes it an offense to conspire to

20   misbrand prescription drugs.  If convicted on that count you

21   would be subject to a term of imprisonment of up to five

22   years, a fine of up to $250,000 and $100 special assessment.

23           Is this on for arraignment as well as presentment?

24           MR. KAMARAJU: No, Your Honor, just for presentment.

25           THE COURT: Thank you.

6

1          Mr. Flood, have you had an opportunity to review the

2     indictment with Ms. Jakacki?

3          MR. FLOOD: Yes, Your Honor, I have.

4          THE COURT: Do you waive its public reading?

5          MR. FLOOD: Yes.

6          THE COURT: Mr. Kaley, have you had an opportunity to

7     review the complaint with Mr. Jakacki?

8          MR. KALEY: I have, Your Honor.

9          THE COURT: Do you waive its public reading?

10         MR. KALEY: Yes.

11         THE COURT: Mr. Cybulski, have you -- I'm sorry.  Mr.

12    Rapawy, have you had an opportunity to review the complaint

13    with Mr. Cybulski?

14         MR. RAPAWY: Yes, I have.

15         THE COURT: Do you waive its public reading?

16         MR. RAPAWY: I do.

17         THE COURT: Does the Government have bail

18    recommendations?

19         MR. KAMARAJU: Your Honor, with respect to Lilian

20    Jakacki and Marcin Jakacki, the government would seek

21    detention.  With respect to Robert Cybulski, the Government

22    having discussed with defense counsel would propose a bail

23    package of $100,000 bond, three financially responsible

24    persons to co-sign secured by property and the standard travel

25    conditions and the other conditions set forth by the Pretrial

1  Services Report which are surrender of all travel documents

2  with no new applications, travel restricted to the Southern

3  and Eastern Districts of New York, Pretrial supervision as

4  directed, to refrain from the unlawful possession of a

5  narcotic drug or other controlled substance, to submit to

6  substance abuse testing and treatment as directed by Pretrial

7  and to continue participation in any -- in any treatment

8  program as directed by Pretrial Services.  Those are reflected

9  at Page 5 of the Pretrial Services Report.

10         THE COURT: Which I don't believe I have.

11                [Pause in proceedings.]

12         THE COURT: Mr. Kamaraju, you noted I believe three

13  financially responsible persons.

14         MR. KAMARAJU: That's right, Your Honor.

15         THE COURT: And you said secured.

16         MR. KAMARAJU: Yes, by property.

17         THE COURT: Do we have specific property in mind?

18         MR. KAMARAJU: I'll let defense counsel proffer.  We

19  had discussed a condominium that I believe is in the name of

20  Mr. Cybulski's girlfriend with who he has a child.  Is that

21  correct?

22         THE COURT: Mr. Rapawy?

23         MR. RAPAWY: That is correct, Your Honor.  The

24  property would be 31 Lamped Loop, Unit #3, Staten Island, New

25  York.  It's a condominium unit that's owned by Mr. Cybulski's

8

1    girlfriend.

2            THE COURT: Very well.  On the basis of the Pretrial

3    Services Report I'll accept that recommendation, release Mr.

4    Cybulski on a $100,000 personal recognizance bond co-signed by

5    three financially responsible persons and secured by the

6    condominium property just referred to.  He shall be subject to

7    regular Pretrial Services supervision.  His travel shall be

8    limited to the Southern and Eastern Districts of New York.  He

9    shall be subject to mental health treatment and drug testing

10   and treatment as directed by Pretrial Services.

11           Is there anything else?

12           MR. KAMARAJU: No, Your Honor.  The defendant -- the

13   Government would just propose the defendant to be released

14   after the financial responsible individuals can sign the bond.

15           THE COURT: And the property be posted by when?

16           MR. KAMARAJU: Within a week.

17           THE COURT: Very well.  Defendant may be released on

18   his signature and that of the three co-signers with the

19   property to be posted by close of business on November 5th.

20   Thank you.

21           Mr. Flood, do you wish to go forward at this time?

22           MR. FLOOD: Yes.

23           THE COURT: Mr. Kaley, do you as well?

24           MR. KALEY: Yes, Your Honor.

25           THE COURT: Very well.  The Government may proceed.

9

1          MR. KAMARAJU: Thank you, Your Honor.  If it's all

2    right with the Court we'll begin with Ms. Jakacki.

3          THE COURT: That's fine.

4          MR. KAMARAJU: Your Honor, I think this will apply to

5    both defendants but the Government believes that the

6    defendant, Ms. Jakacki, poses a risk of flight in that she has

7    the incentive to flee and the means to flee and a place to

8    flee to.

9          Specifically with respect to the incentive, Ms

10   Jakacki is facing a substantial amount of time based on the

11   charges alleged.  As detailed in the indictment, Count 1

12   involves an illegal oxycodone distribution scheme in which --

13   in excess of 500,000 pills were illegally diverted.  As a

14   basis of just that drug quantity or just based on that drug

15   quantity Ms. Jakacki's guidelines in a criminal history

16   category 1 would place her at a level -- offense level 38.

17   This is just based on drug quantity which would have a

18   guidelines range of 235 months to 293 months of imprisonment.

19   That does not account for any enhancements such as operating a

20   premises out of which narcotics are being trafficked.

21          In addition to facing a substantial sentence, and

22   that's just -- to be clear, Your Honor, that's just on the

23   drug count.  That does not involve the other counts or any

24   enhancements which may apply as a result of that.

25          In addition to the significance of the sentence, the

10

1   evidence as detailed in the indictment against Ms. Jakacki is

2   staggering.  It includes not only records from her own

3   pharmacy or based on information provided from her own

4   pharmacy but bank records, undercover buys which are recorded

5   and on videotape and in addition I'll just note that the DA

6   audit reports that Ms. Jakacki was unable to account for more

7   than 400,000 pills of oxycodone herself.

8          So the evidence on the oxycodone scheme alone is

9   overwhelming.  The money laundering scheme is premised largely

10  on bank records which -- that I will show and I'll talk more

11  about this in a moment, Your Honor.  That Ms. Jakacki together

12  with Marcin Jakacki deposited in excess of $400,000 in a

13  series of structured financial transactions were caused to be

14  deposited over the course of a several month period.  So on

15  the one hand you have the substantial sentence that she is

16  potentially facing and the evidence against her.

17         In addition, as you look at the Pretrial Services

18  Report Ms. Jakacki has not reported -- the information

19  provided by Pretrial does not indicate substantial ties here

20  to the New York area.  She lives in Greenwich.  She lives with

21  her husband, who as the court is aware is also charged, and

22  there are no children for which -- there are no children as a

23  result of the marriage.

24         So her ties to this area are largely, at least based

25  on the information provided in Pretrial, her husband.  The two

1  of them both have the very same incentive to flee and if the

2  Court looks at Marcin Jakacki's Pretrial Services Report he

3  informed Pretrial that he has substantial family connections

4  in Poland.  In fact, I believe he said that other than his

5  wife all of his family resides in Poland.  So from that

6  perspective, Your Honor, Ms. Jakacki has a place to go and she

7  has a reason to go there and to flee.

8          Something else that I think should be noted is Ms.

9  Jakacki reported to Pretrial Services that for I guess before

10  2014 for approximately 19 years she worked at Showfam [Ph.]

11  Chemist which is a pharmacy described in the indictment where

12  she earned approximately $149,000 annually.  That's what's

13  reported in the Pretrial Services Report.

14          During that period Ms. Jakacki and Mr. Jakacki were

15  able to obtain based on that salary a home valued at

16  approximately $2 million.  They were able to -- I believe it's

17  a lease, lease a Porsche valued at $45,000 and a Land Rover

18  valued at least -- which I believe is also leased.  A Land

19  Rover valued at $100,000.  As detailed in the indictment, Your

20  Honor, a significant portion of the money that went to the

21  purchase of that home and in general to her lifestyle was

22  driven by cash proceeds that in the Government's view were

23  caused by the illegal oxycodone scheme which was funded by the

24  Medicare fraud scheme described in the indictment.

25          So the Government has serious concerns as to whether

12

1   even any assets that she could put up for -- with respect to a

2   bond would not be derived from a criminal source.

3         So for all of those reasons we think that she poses

4   a flight risk.  If the Court has any questions about Ms.

5   Jakacki I'm happy to answer them.  That's our position.

6         THE COURT: I'll hear from Mr. Flood.

7         MR. FLOOD: Thank you, Your Honor.  Ms. Jakacki is 49

8   years old.  This is her first contact with any criminal

9   [inaudible] whatsoever let alone the Southern District of New

10  York, has never lived outside of this country, has lived in

11  the New York metropolitan area her entire life, Greenwich,

12  Connecticut and so I'm sort of stunned to hear the Government

13  say she doesn't have substantial ties here.  49 years in this

14  metropolitan area.

15        I really don't know what to even make of the

16  Government's claim that -- I just -- when the Government says

17  that the marriage has not produced any children and that

18  should be held against Ms. Jakacki, I think the Government

19  should be [inaudible].  That is an astoundingly unfair

20  argument.  So I ask the Court to disregard it completely.

21        The fact of the matter is this woman has a mother

22  and sister in Brooklyn, has a sister I believe in Long Island

23  and another sister in -- another sister in Westchester.  These

24  are close family members who are substantially tied to this

25  community who could be relied upon to co-sign the bond.  No,

13

1    they're not children.  They're siblings and a parent.

2           She does have assets that the Court has seen that

3    can be encumbered that could be [inaudible] that could be co-

4    signed -- that could be put up, encumbered [inaudible] bond

5    [inaudible] that could be available for Ms. Jakacki herself

6    and [inaudible] for my colleague for her husband as well.

7           She's not demonstrated any kind of flight risk in

8    the past.  To say that the Government's case can be tried here

9    in magistrate's court on a bond is to put the cart before the

10   horse.  The Government's [inaudible] the strength of its case

11   that is something to be determined before Judge Rakoff.  To

12   detain this woman on the strength of the case alone is simply

13   to [inaudible] strength of the case in the indictment is

14   really to [inaudible] one single factor.

15          The Pretrial Report if you look at the last page,

16   the second to last page assesses her risk of flight on two

17   factors.  International travel from ten years ago and

18   possession of an expired passport which if it wasn't seized

19   already can be turned over today.  Those are the factors that

20   Pretrial identifies and those are the only really fair factors

21   that the Court [inaudible] consider.

22          The rest are about the allegations in the case which

23   the Government will have ample opportunity to [inaudible]

24   Jakacki.  There's a process for that.  It's not in a bond

25   determination.  She's not a risk of flight.  They haven't

14

1  mentioned anything about danger to the community and I won't

2  belabor [inaudible].

3          So what we propose are two co-signers [inaudible]

4  from the adult family members she has that Pretrial has

5  identified, a bond of whatever the Court thinks is appropriate

6  and if the Court wants to encumber that with the property the

7  Court knows from the Pretrial Report and the financial

8  affidavit [inaudible].

9          THE COURT: Thank you.  Mr. Kamaraju.

10          MR. KAMARAJU: Just briefly, Your Honor.  One note on

11  the property.  In light of the money laundering allegations

12  that are in the indictment, the Government has sought and

13  received a lis pendens on that property.  So it does -- which

14  it intends to file either later today or certainly tomorrow.

15  So I just wanted to note that for the Court.

16          With respect to the characterization of the argument

17  as to children, I'm not going to respond to that.  My point

18  simply is that arguably Ms. Jakacki's most significant tie to

19  this area is her co-defendant.  So together they obviously

20  would be able flee.

21          And finally, the fact that this is her first

22  encounter with the Southern District of New York and the

23  criminal process I think actually weighs in favor of flight

24  given the substantial sentence that she stands to face.  She's

25  not experienced at this -- with the criminal justice system

1   and to face that level of potential sanction I believe

2   increases the risk of flight.

3           So unless the Court has further questions --

4           THE COURT: Thanks.  Anything else?

5           MR. FLOOD: If I understand the Court's argument --

6           THE COURT: It's not the Court's argument yet.

7           MR. FLOOD: I'm sorry.  If I understand the

8   Government's argument someone with a longer record would be a

9   lesser risk of flight [inaudible].

10          THE COURT: Give me one moment.

11                  [Pause in proceedings.]

12          THE COURT: On the basis of the Pretrial Services

13  Report, the indictment and the proffers of counsel, I find

14  that the Government has not sustained its burden of

15  demonstrating that the defendant presents a risk of flight

16  such that there are no conditions that would reasonably assure

17  her return to Court nor a danger to the community such that

18  there are no conditions that would reasonably assure the

19  safety of the community.

20          With respect to Ms. Jakacki, the Government does

21  benefit from the presumption on the basis of the narcotics

22  charge and while that is significant I think it is overcome by

23  a variety of factors.  The evidence against her is strong

24  based on the Government's proffer and I think that's a

25  legitimate consideration.  While it's not the only

16

1  consideration it certainly does weigh in the balance because

2  it creates some incentive for flight.  On the other hand, she

3  does have substantial ties to the community having resided

4  here for almost 50 years.  She has extended family here and

5  while her husband is a co-defendant obviously they have had a

6  relationship in the community.

7         So on that basis she's released on $1 million

8  personal recognizance bond co-signed by five financially

9  responsible persons and secured by the home.  I understand

10  that the Government is asserting a lien on it with respect to

11  forfeiture but I think that it still serves a purpose with

12  respect to acting as security on the bond.

13         Upon release the defendant shall be subject to home

14  detention electronically monitored.  She shall surrender all

15  travel documents and not apply for new ones.  She shall be

16  subject to strict Pretrial Services supervision consistent

17  with electronic monitoring and to the extent that she is out

18  of the home she shall be -- her travel shall be limited to the

19  Southern and Eastern Districts of New York and the District of

20  Connecticut.

21         Do you want to be heard further on Mr. Jakacki or

22  shall I hear from Mr. Kaley?

23         MR. KAMARAJU: I think all the same arguments apply.

24  The only additional thing I would note, Your Honor, is the

25  Pretrial Services Report points to a number of weapons that

1 Mr. Jakacki has in the house.  So to the extent the Court is

2 inclined to grant bail we would certainly ask that those --

3 the Court consider that factor.  That's all.

4          THE COURT: Thank you.  Mr. Kaley.

5          MR. KALEY: Your Honor, Mr. Jakacki is 36 years old.

6 His wife is here in court.  They've been married for about

7 five years.  Just to pick up on the weapons, Your Honor,

8 they're all lawfully owned under the laws of the State of

9 Connecticut, has licenses for them.  We'll surrender them to a

10 local precinct or at least the Department of Connecticut when

11 he's released.

12          [Inaudible], Your Honor.  He has no prior criminal

13 record.  There seems to have been one prior arrest for

14 possession of a knife.  He was given a desk appearance ticket

15 and the case apparently was dismissed according to

16 [inaudible].

17          Pretrial recommends release on a bond unsecured

18 [inaudible] secured by two financially responsible signatures.

19 We think Pretrial has it right here on this.  There's no

20 mandatory sentence under this case.  Mr. Jakacki's charged

21 with only three counts.  The narcotics charge is a D1C, has no

22 mandatory sentence.  We can fight about the rest as the case

23 moves forward before Judge Rakoff.  He's not a risk of flight.

24 He is a citizen of Poland and has a Polish passport.  If the

25 passport hasn't already been seized by the Government we will

18

1    make arrangements to have it surrendered.

2            He has the same family relationships with his wife's

3    family and they are supportive of both of them as they stand

4    here before the Court.  They maintain their innocence and the

5    process will go forward.  There's no reason that I can see,

6    Your Honor, that he should be held in jail while this case

7    goes forward.  He has roots.  He has been here in the United

8    States for nine years.  He's got legal status.  He is a green

9    card holder.  He has every reason to stay here and to fight

10   the charge and to continue his relationship with his wife.

11           Your Honor, I see no reason why the Pretrial

12   recommendation shouldn't be adopted.  If the Court is inclined

13   to impose home detention or electronic monitoring of course we

14   would go along with that.  I'd only ask Your Honor that if you

15   do set conditions for bail that Mr. Jakacki be given a week to

16   get them in order so that he can be released today and I'll

17   make arrangements for the passport to be immediately

18   surrendered if it hasn't been and we'll make arrangements for

19   those firearms to be turned over.

20           THE COURT: Mr. Kamaraju.

21           MR. KAMARAJU: I think the arguments that the

22   Government advanced in the past apply full force here.  The

23   one thing we would say is to the extent Mr. Jakacki is granted

24   bail it does not make sense to the Government for those bail

25   conditions to be substantially different from those imposed on

1   Mrs. Jakacki given their familial relationship and the risk of

2   flight that's at least in the Government's view equally

3   applicable to both of them.

4          With respect to the last comment by defense counsel,

5   the Government believes that the conditions should be met

6   first before -- all conditions should be met before they're

7   released to insure that -- as the Court recognized there

8   are -- there is some risk of flight here at least to insure

9   that that is taken into account.

10         THE COURT: Again, on the basis of the Pretrial

11  Services Report the indictment and proffers of counsel, I find

12  that the Government has not sustained its burden of

13  demonstrating that the defendant presents either a risk of

14  flight or a danger to the community.

15         The rationale is largely the same.  There is on one

16  hand somewhat diminished risk with respect to Mr. Jakacki

17  because of the lesser charges.  On the other hand, he has ties

18  outside the United States.

19         I will release him on $1 million personal

20  recognizance bond again secured by the home.  It may be

21  offered as security on both bonds.  The bond shall be co-

22  signed by three financially responsible persons.  Upon his

23  release he shall be subject to home detention electronically

24  monitored, strict Pretrial Services supervision.  He shall

25  surrender all travel documents and not apply for new ones.  To

20

1   the extent that he's out of the home his travel shall be

2   limited to the Southern and Eastern Districts of New York and

3   Connecticut and he shall surrender all firearms.

4          With respect to both defendants, all conditions

5   shall be met prior to release with the exception of the

6   paperwork for posting the home which shall be completed by

7   November 5th.  That's a week from today.

8          Is there a conference with Judge Rakoff?

9          MR. KAMARAJU: There has not been one set yet.

10         THE COURT: Very well.  Thank you all.

11         MR. FLOOD:  We need to access to Ms. Jakacki's

12  telephone to have co-signer information because they're not

13  being released today.  We understand the case agent seized

14  that phone.  I would ask the Court to direct that phone be

15  turned over to the defense immediately so that we can meet the

16  conditions.

17         THE COURT: I won't put it in quite those terms but I

18  will expect that the agent and the Government will work with

19  you to provide whatever information you need in order to

20  access that information.

21         MR. KAMARAJU: Your Honor, I would note for the

22  record that just this afternoon the Government obtained a

23  search warrant for the contents of that phone.

24         THE COURT: Right.

25         MR. KAMARAJU: So assuming we can get into it.

1  Sometimes they're locked.  We're happy to provide whatever

2  contact information defense counsel wishes.

3          THE COURT: Thank you.

4          MR. FLOOD: Just one other thing, Your Honor.  With

5  regard to the property since the Government is going to be

6  filing as indicated a lis pendens, that basically secures the

7  property.  There's no ability to finance against that property

8  with the pendency of the lis pendens.  There's no ability to

9  transfer the property.  So in order to facilitate whatever

10 paperwork is necessary once the Government files a lis pendens

11 that property is immobilized.  Nothing can happen to it and

12 that probably [inaudible].

13         THE COURT: Well, I'm not sure that that's enough.

14 That simply means nothing can be done with it.  It doesn't

15 mean the Government can get it if a defendant were to flee.

16 So I think we need a confession of judgment on the property.

17         MR. FLOOD: We'll work that out, Your Honor.

18         THE COURT: Thank you.

19         MR. KALEY:  Your Honor, just one final thing.  We've

20 only been appointed for today.

21         THE COURT: Correct.

22         MR. KALEY: Will our appointment continue until we

23 work out these bail conditions?

24         THE COURT: Yes.  Thank you.

25         MR. KALEY: Thank you.

22

1          I certify that the foregoing is a court transcript

2    from an electronic sound recording of the proceedings in the

3    above-entitled matter.

4

5    _____

6                        Shari Riemer, CET-805

7    Dated:  November 3, 2015