LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**
A PROFESSIONAL CORPORATION

29 BROADWAY
Suite 1412
NEW YORK, NEW YORK 10006
---
TELEPHONE (212) 732-0707
FACSIMILE (212) 571-3792
E-MAIL: JDratel@JoshuaDratel.com

JOSHUA L. DRATEL
—
LINDSAY A. LEWIS
WHITNEY G. SCHLIMBACH

STEVEN WRIGHT
*Office Manager*

December 17, 2015

**BY ELECTRONIC MAIL**

The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *United States v. Marcin Jakacki*,
15 Cr. 727 (JSR)

Dear Judge Rakoff:

This letter is submitted on behalf of defendant Marcin Jakacki, whom I represent in the above-entitled matter, in support Mr. Jakacki's application for bail rehearing. Mr. Jakacki's bail rehearing is scheduled for Tuesday, December 22, 2015, at 5:30 p.m. As set forth below, the factual predicates underlying the Court's November 4, 2015, Detention Order were based on inaccurate information presented to the Court at that time, and thus notwithstanding the Court's previous Detention Order and/or the presumption against bail in 18 U.S.C. §3142(e)(3)(A) based on the amount of drugs allegedly involved in the offense charged in the Complaint, the Court should set bail for Mr. Jakacki.

Contrary to the factual representations made to the Court during Mr. Jakacki's November 3, 2015, bail hearing, upon which this Court relied in Ordering Mr. Jakacki's detention, Mr. Jakacki does not present a meaningful risk of flight and therefore, can and should be released with appropriate conditions.[1] As detailed below, among the reasons Mr. Jakacki should be

[1] In light of the fact that the Court did not find Mr. Jakacki to be a danger to the community, *see* November 4, 2015, Detention Order, at 3, and in consideration of the fact that the government, through Assistant United States Attorney Sidhartha Kamaraju, has informed defense counsel that the government also does not oppose detention on this ground, this letter will only address risk of flight and the remaining bail factors under 18 U.S.C. §3142(g).

granted bail are:

(1) for example, the Detention Order, at 2, cited Mr. Jakacki's "family ties to Poland" including that Mr. Jakacki "had a son from a previous marriage who resides in Poland to whom he sends money on a monthly basis" as grounds for denial of bail. That was not accurate. In fact, Mr. Jakacki, who is a legal permanent resident of the United States and would be eligible to pursue U.S. citizenship in 2016, does not present a risk of flight on these grounds, given that the government vastly overstated Mr. Jakacki's ties to Poland at his initial arraignment and subsequent bail hearing before this Court, and Mr. Jakacki's financial affidavit, from which the information about Mr. Jakacki's son was obtained, does not include critical details regarding that relationship, or more precisely the lack of relationship. Mr. Jakacki has not returned to his native country of Poland or seen his eleven year old son, who resides in Poland, or – contrary to the "contrast" between Mr. Jakacki and her husband relied on by the Court, *see id*., at 3 – left the United States *at all*, in the near decade since his immigration. Mr. Jakacki has also been estranged from his parents, who live in Poland, for the past approximately five years. Moreover, Mr. Jakacki does not provide any funds directly to his son on a monthly basis. Rather, any money provided is from a modest sum Mr. Jakacki gave to his parents years ago, for this general purpose, which Mr. Jakacki's parents apportion out to Mr. Jakacki's son at their own discretion, at intervals that they determine, and without any consultation with Mr. Jakacki;

(2) similarly, for example, the Court, *see id*., at 3, relied on a representation by defense counsel for Mrs. Jakacki that "Mrs. Jakacki's sisters, among others, [were] co-signing her "1,000,000 bond." To the extent that this representation led the Court to conclude that Mrs. Jakacki's family was not prepared to co-sign for Mr. Jakacki, or that he did not have eligible co-signers to secure his presence at future court appearances, that is not the case. In fact, in light of Mr. Jakacki's estrangement from his parents in Poland, and cursory relationship with his son, Mr. Jakacki's most significant family ties over the past near decade are with family in the U.S., including his wife, Lilian, her family, and Mr. Jakacki's maternal grandmother, who resides in Brooklyn and who he sees on a weekly basis. As set forth in letters discussed **post**,[2] Mr. Jakacki's in-laws are aware of

[2] Due to time constraints, counsel does not have signed originals of all of the letters referenced herein. The original signed versions of letters obtained by counsel thus far are attached hereto, and any additional signed originals received by counsel will be provided to the

issues Mr. Jakacki and his wife, Lilian, have had in their marriage, including Mr. Jakacki's recent infidelity, and they continue to wholeheartedly support him and his application for release on bail. As a testament to the strength of Mr. Jakacki's relationship with his in-laws, who as set forth in the letters referred to **post** are as devoted to Mr. Jakacki as he is to them, Mr. Jakacki's mother in-law, Jadwiga Wieckowski is prepared to post her home in Brooklyn, in which she has $1.8 million in equity, to secure Mr. Jakacki;s bond, and she, along with two of Mr. Jakacki's sisters-in-law, Stella and Elizabeth Wieckowski, his brother-in-law, Stanley Wieckowski, and his niece, Josephine Hupalo, are all prepared to co-sign Mr. Jakacki's bond if approved to do so by the Court. Each has already been pre-qualified by the government as a financially responsible person (though the government has indicated that they would only consent to Jadwiga and Stanely Wieckowski as co-signers if Jadwiga Wieckowski's home in Brooklyn was also posted);

(3) the Court also denied Mr. Jakacki bail on the basis that, "Mr. Jakacki has access to significant financial resources and thus the wherewithal to flee." *See* Detention Order, at 3. This too, is not factually accurate given that Lilian Jakacki's financial affidavit, upon which the Court concluded that the Jakackis have significant assets at their disposal, paints a far rosier picture of the couple's financial profile than is warranted. In fact, aside from Mr. and Mrs. Jakacki's home – which, although worth $2.4 million as of the most recent appraisal of the house, is encumbered by a $1 million confession of judgment from the equity in the home used to secure Mrs. Jakacki's bond, an $870,000 mortgage, and would be further encumbered if the Court sets bail and the Jakackis are permitted to post the remaining approximately $530,000 in equity they hold in the property as collateral to secure Mr. Jakacki's bond – Mr. and Mrs. Jakacki do not possess any significant assets (such as their two cars) outright and are saddled by substantial credit card debt;

(5) in denying Mr. Jakacki bail, the Court also cited the fact, *see id*., at 2, that Mr. Jakacki "is charged in three counts with serious offenses that carry maximum sentences of up to 20 years in prison." While true, this assessment does not take into account that Mr. Jakacki has no prior criminal history whatsoever and that his actual sentencing exposure is nowhere near the statutory maximum sentence of 20 years in prison. In fact, were Mr. Jakacki to be convicted of *all* of the charges in the Indictment as well as the full amount of drugs charged in the conspiracy, without any reduction for role in the offense (which the facts in the Indictment, if

Court at Mr. Jakacki's bail hearing.

assumed to be true, would likely warrant), the very top end of his Guidelines range would be 78 months, which equates to 6.5 years; and

(6) Mr. Jakacki's Sixth Amendment right to counsel and to prepare his defense would suffer immeasurably if he was not afforded bail. Mr. Jakacki is at a greater "informational disadvantage" than a typical defendant, and even a typical defendant subject to detention, in light of the fact that he can speak and read, but cannot write, in English. Thus, Mr. Jakacki cannot avail himself of e-mail to communicate with counsel, one of the mainstays of detained inmates in terms of communication with their attorneys. Mr. Jakacki's limitations in regard to the English language also impede his ability to review the significant amounts of discovery in this case on his own, as he cannot adequately take notes to provide to counsel in English, and his attorneys do not speak or read Polish.

For all these reasons, it is respectfully submitted that the Court should set a reasonable bail for Mr. Jakacki, concurrent with any conditions – including electronic monitoring, or any other strict terms – the Court is empowered to impose.

## I. *Procedural History*

An Indictment issued against Marcin Jakacki, October 26, 2015, charging him in three Counts, including conspiracy to distribute and possess with intent to distribute oxycodone, conspiracy to launder money and money laundering. Mr. Jakacki was arrested on October 29, 2015, and appeared before Magistrate Judge James C. Francis on that date.

Magistrate Judge Francis set bail in Mr. Jakacki's case under the following conditions: (1) a $1,000,000 personal recognize bond, co-signed by three financially responsible persons and secured by a home; (2) surrender of travel documents and travel restricted to the Southern and Eastern Districts of New York; (3) home detention; (4) surrender of any firearms; and (5) electronic monitoring. Mr. Jakacki was Ordered to be released upon signing of the bond, with all remaining conditions to be met by November 5, 2015.

However, during Mr. Jakacki's November 3, 2015, arraignment before Judge Rakoff, the government renewed its argument for the detention of Mr. Jakacki, and also for the detention of his wife, and co-defendant, Lilian Jakacki. Ultimately, Judge Rakoff Ordered that Mr. Jakacki, but not Mrs. Jakacki, should be detained pursuant to 18 U.S.C. §3142(i), determining that Mr. Jakacki presented a risk of flight. *See* November 4, 2015, Detention Order, at 1.

Specifically, the Court found Mr. Jakacki to be a "meaningful risk of flight for several

reasons," including that (1) he faces serious charges and each of the three charges against him carries a maximum sentence of 20 years imprisonment; (2) Mr. Jakacki moved to the U.S. less than a decade ago from Poland, so his length of residence in the U.S. is relatively short; (3) his financial affidavit reveals a son from a previous marriage in Poland to whom he sends money on a monthly basis, evidencing family ties to Poland; (4) the Indictment alleges the Jakackis collected hundreds of thousands of dollars in proceeds from their charged conspiracy, which they used to purchase, among other things, a house valued at $2 million in Greenwich, Connecticut, and a recently purchased Porche and Land Rover, demonstrating that Mr. Jakacki has access to significant financial resources and thus the wherewithal to flee; and, (5) significant evidence in the form of illegal sales of oxycodone to undercover agents. *See id.,* at 2-3. The Court did not, however, determine that Mr. Jakacki posed a danger to the community. *Id*., at 3.

By contrast, the Court determined that Mr. Jakacki's wife, Lilian, should not be detained because (1) she is a U.S. citizen who has lived in U.S. her whole life and has not traveled internationally in the last 10 years; (2) her ties to Poland are far less significant; and (3) her immediate family, including her sisters among others had committed to co-signing her bond, such that her flight would bring significant financial hardship to her immediate family members. *See id.,* at 3.

In mid-November, Mr. Jakacki retained new counsel, the undersigned, who by telephonic conference December 15, 2015, petitioned the Court for leave to file papers in support of a renewed application for bail and for a bail rehearing. The Court granted counsel's request to make a written submission in support of bail, and set a bail rehearing for December 22, 2015, at 5:30 p.m.

## II. *Mr. Jakacki's Personal History and Characteristics Warrant His Release on Bail Under the Standards Set Forth in 18 U.S.C. §3142, Even Despite the Statutory Presumption Against Bail That Exists In Mr. Jakacki's Case*

As set forth herein, there are several factors, operating separately or in combination, that justify granting Mr. Jakacki's application for bail pursuant to 18 U.S.C. §3142, the statute governing a defendant's release or detention pending trial. Indeed, pursuant to §3142(g), in determining whether there exist conditions of release that would "reasonably assure the appearance of the person as required and the safety of any other person and the community," the Court must take into consideration,

(1) "the nature and circumstances of the offense charged;"

(2) "the weight of the evidence against the person;"

(3) "the history and characteristics of the person including –

(A) the person's character, physical and mental condition, family ties, . . . financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings;" and

(4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

18 U.S.C. §3142(g).

Indeed, in consideration of the factors enumerated in §3142(g), if the Court determines that Mr. Jakacki is eligible for release on conditions, the Court must, pursuant to §3142(c)(1)(B), order Mr. Jakacki's pretrial release "subject to the least restrictive further condition, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]"

The Indictment alleges a violation of 18 U.S.C. §841(b)(1)(C), which, owing to the fact that the maximum term of imprisonment prescribed by statute for that offense is more than ten years, carries a presumption against bail. *See* 18 U.S.C. §3142(e)(3)(A). However, the defendant need only meet "a limited burden of production...[of] evidence that he does not pose a danger to the community or a risk of flight," to rebut that presumption, and here the facts, letters, and proposed security provided in support of this application more than suffice to overcome that statutory presumption. *See United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011) (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001); *United States v. Hall*, 651 F.Supp. 13, 15-16 (N.D.N.Y. 1985) (defendant's lack of criminal history, along with letters and documents establishing his close ties to his family and the United States, was sufficient to overcome the presumption).

Moreover, as set forth in the Court's November 3, 2015, Detention Order, at 2, "the burden is on the government to show by a preponderance of the evidence that the defendant presents an actual risk of flight and that no condition or combination of conditions could be imposed that would reasonably assure his . . . presence in court." *Id.*, at 2, *citing United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007).

## III. *Mr. Jakacki Does Not Present a Flight Risk*

For the reasons outlined above, and set forth **post**, which take into account facts not presented to the Court during Mr. Jakacki's November 3, 2015, bail hearing, and correct and/or

clarify other representations made to the Court at that time, Mr. Jakacki does not present a meaningful risk of flight.

**A. *For Multiple Reasons, The Potential Penalties for the Charged Offense Are an Insufficient Basis for Finding Mr. Jakacki to Be a Flight Risk***

As a threshold matter, while the offenses charged against Mr. Jakacki in the Indictment carry a maximum sentence of 20 years imprisonment, they do not prescribe a mandatory minimum sentence, nor would Mr. Jakacki's Sentencing Guidelines exposure conceivably approach the statutory maximum of 20 years, given his complete lack of criminal history and the particularly limited role he allegedly played in the offense, as set forth in the Indictment.[3]

In calculating Mr. Jakacki's potential exposure under the Guidelines, since Mr. Jakacki has never been convicted of a crime, nor has he been arrested, either in the United States or his native Poland, his spotless criminal record would mean placement in Criminal History Category I. With respect to the charged offenses, the base offense level would be dependent on the quantity of drugs involved, alleged in the Indictment to be 500,000 tablets of oxycodone over the course of the conspiracy, alleged to have begun in 2010 and extended through 2015.[4] *See* Indictment, at ¶¶ 7-14. Even assuming that Mr. Jakacki's sentencing range is based on the total number of tablets alleged to have been distributed over the course of the conspiracy, the resulting Base Offense Level is 26, corresponding to a Guidelines range of 63-78 months.[5]

Furthermore, the facts alleged in the Indictment firmly suggest that Mr. Jakacki would be entitled to a minor role or even a minimal participant adjustment for his limited involvement in the charged offenses, pursuant to § 3B1.2(b). Consequently his base offense level would be reduced by two levels, bringing his total offense level to 24 and resulting in a sentencing range of

---

[3] It should be noted that Mr. Jakacki does not concede any role in the alleged offenses and this analysis is solely for the purpose of determining Mr. Jakacki's potential exposure to rebut detention on the grounds of the severity of the charged offenses.

[4] Pursuant to U.S.S.G. § 2S1.1(a)(1), and assuming conviction on the conspiracy to distribute narcotics count, the applicable base offense level is that "for the underlying offense from which the laundered funds were derived, if (A) the defendant committed the underlying offense."

[5] Because the Indictment does not specify the actual weight of the oxycodone involved in the alleged drug conspiracy, the Base Offense Level was calculated using units of Schedule II depressants in the Drug Quantity Table contained in § 2D1.1(c), since oxycodone is considered a "depressant" and a Schedule II controlled substance.

51-63 months, or even as low as 41-51 months if he were to receive a minimal role reduction of four points pursuant to § 3B1.2(a).[6]

Furthermore, while the drug conspiracy is alleged to have spanned from "March 2010 up to and including in or about October 2015," *see* Indictment, at ¶ 1, the Indictment does not reference any overt acts involving Mr. Jakacki other than between September and October 2015. *See* Indictment, at ¶¶ 18-19. Thus, while the above calculations assume that Mr. Jakacki could be held liable for the full amount of oxycodone alleged to have been involved in the narcotics conspiracy, if he is only found to have been involved at the tail end of a conspiracy that ranged years, the drugs attributable to him personally, and his overall exposure under the Guidelines, would be far less than even the calculations herein provide.

Accordingly, although the offenses charged carry a statutory maximum of 20 years, Mr. Jakacki's personal sentencing exposure simply does not provide an incentive for him to flee, given that he would almost certainly be granted a minor role reduction based on the facts as alleged in the Indictment, if not a minimal participant adjustment, and his total lack of criminal history. Indeed, even in the worst case scenario, without any minor role reduction whatsoever, the top end of Mr. Jakacki's potential Guidelines range, were he to plead to all of the charges in the Indictment, would still amount to only 6.5 years, far less than the statutory maximum.

### B. *Mr. Jakacki's Strong Ties to Family in the New York Area Far Outweigh His Limited Ties to Family in His Native Poland*

As noted **ante** and addressed in detail **post**, Mr. Jakacki not only has very limited contact and strained relationships with his relatives in Poland, but he is, and has been for several years, deeply embedded in his wife Lilian's family, who reside in or near the Southern District of New York. Furthermore, his closest familial relationship, excepting his wife and her family, is with his maternal grandmother, who has lived in Brooklyn for over ten years. Indeed, by any measure, Mr. Jakacki's only significant ties are to persons residing in the Tri-State area.

#### 1. *Mr. Jakacki's Ties to His Native Country of Poland Are Extremely Weak as Evidenced By the Fact That Is Estranged From His Parents Who Live There, And Has Not Seen His Son Once In the Past Near Decade Since He Left Poland to Immigrate to the United States and Start His Life Anew*

---

[6] Moreover, it should be noted that if Mr. Jakacki were convicted on the drug charge, but not the money laundering counts, his Guidelines range – with a minimal role adjustment – could be as low as 33-41 months, pursuant to §2D1.1(b)(16).

Mr. Jakacki, who was born in Poland, but who is a legal permanent resident of the United States and would be eligible to pursue U.S. citizenship in 2016, does not present a risk of flight, given that the government vastly overstated Mr. Jakacki's ties to Poland at his initial arraignment and subsequent bail hearing before this Court. Mr. Jakacki has not returned to his home country of Poland, or even left the U.S. once, since he immigrated to New York in 2006. He has been estranged from his parents who live in Poland for almost five years and has not seen his eleven year old son (from an extremely brief prior marriage), who resides in Poland, in almost a decade.

In fact, Mr. Jakacki, who left his son's mother when his son was only three or four months old, and moved to the U.S. when his son was scarcely a year old, communicates with his son only two or three times each year on special occasions. Even the small amount of money Mr. Jakacki provides to his son each month – a fact, which as set forth **ante**, was taken from Mr. Jakacki's financial affidavit which the Court relied on as evidence of "family ties to Poland"– is not provided directly from Mr. Jakacki to his son. Rather, the money is doled out by Mr. Jakacki's parents, at their discretion and without any oversight or direction from Mr. Jakacki, from the sum of $5,000 or $6,000 which Mr. Jakacki provided to his mother in approximately 2012, for this purpose, during a visit she made from Poland to see her mother (Mr. Jakacki's maternal grandmother).

Indeed, aside from Mr. Jakacki's interaction with his mother nearly three years ago, during which he gave her the money for his son, he has not seen or spoken to his mother or father in over five years. Notably, when Mr. Jakacki's mother came to New York to see Mr. Jakacki's grandmother, she stayed for five or six weeks, but Mr. Jakacki only saw her on that one occasion.

By contrast, and as set forth **post**, Mr. Jakacki has a far closer and stronger relationship with his family in the U.S,, which includes not only his wife and wife's family, but also his material grandmother and great aunt.

### 2. ***Mr. Jakacki's Ties to the United States Are Substantially Stronger than His Ties to Poland and In Fact, His Primary Familial Relations Are with His Wife's Family and His Grandmother, Who Live in New York***

Mr. Jakacki and his wife met in during the summer of 2009, while he was doing renovations on her mother's home. As she remembers it, she "noticed he had a chipped tooth and tended not to smile so much, but when he laughed you looked past that and only at his smile." Lilian Jakacki Letter, attached hereto as Exhibit 1. Less than a year later, they were engaged, and were married in February 2011. *See id.* As Mr. Jakacki's niece, Josephine Hupalo, writes, Mr. Jakacki "would always say that . . . Lilian is his soulmate." Josephine Hupalo Letter,

attached hereto as Exhibit 2.

Over the course of their relationship, the Jakackis have demonstrated to those around them that they are committed to staying together and making their marriage work, "even despite troubles they have faced in their marriage." Jadwiga Wiecknowski Letter, attached hereto as Exhibit 3. Lilian explains that the trials the two have faced together over the years affirmed to her family and herself that "Marcin would never desert [her], nor flee," as "he had many chances during the course of [their] marriage to do that, . . . but he always remained with [her] to face [their] ups and downs together." Lilian Jakacki Letter, Exhibit 1.

Since the two met, Mr. Jakacki has grown extremely close to his wife's family, especially her mother, who "consider[s] him to be [her] fifth child." Jadwiga Wiecknowski Letter, Exhibit 3. All of his wife's family got to know Mr. Jakacki well before he married Lilian, because, as Lilian's brother, Stanley Wieckowski, writes, "[Marcin] knew that [Lilian] is very close to her family, particularly [her] mother" and so Mr. Jakacki has been involved in family events and gatherings from the very beginning. Stanley Wieckowski Letter, attached hereto as Exhibit 4. Mr. Jakacki "has been part of [their] family for almost 7 years." Stella Wieckowski Letter, attached hereto as Exhibit 5.

Mr. Jakacki, "polite and well-mannered" and "always respectful," was accepted into the Wieckowski family very quickly. *Id*. Lilian's mother, Jadwiga Wieckowski, describes Mr. Jakacki as a "polite and soft-spoken" man, "devoted to Lilian," and "enthusiastic" with her grandchildren. Jadwiga Wiecknowski Letter, Exhibit 3. According to Mr. Jakacki's niece, Constance Hupalo, Mr. Jakacki is her grandmother's "favorite son-in-law," because "she likes hard working people and she is proud of all his work." Constance Hupalo Letter, attached hereto as Exhibit 6. Mr. Jakacki "always has a story to tell, or something to patiently explain to [their] nephew and nieces about cars, plumbing, growing up or just about any other topic." Lilian Jakacki Letter, Exhibit 1.

As Mr. Jakacki and his wife "really have no social friends beyond [her] family," Mr. Jakacki is naturally very involved in her family, from attending all of the important holidays and birthdays to renovating the family homes at no cost. As Stella Wieckowski, his sister-in-law writes, "Marcin has always lent [her] family a helping hand in all aspects of his expertise as well as things he is not so familiar with." Stella Wieckowski Letter, Exhibit 5. As a result of many years of mutual affection and respect, Mr. Jakacki "has become part of [the Wieckowski] family" and is fully supported by them. Stanley Wieckowski Letter, Exhibit 4. In turn, the Wieckowski family is "everything" to Mr. Jakacki and his wife. Lilian Jakacki Letter, Exhibit 1.

Elizabeth Wieckowski, his sister-in-law, writes that "Marcin is family oriented and hard working" and "has over time become much closer to [her] family than he is to his own family."

Elizabeth Wieckowski Letter, attached hereto as Exhibit 7. Indeed, while getting to know Lilian's family, Mr. Jakacki has even "become somewhat of a father figure" to one of Elizabeth's nephews "who has grown up fatherless." *Id*. Mr. Jakacki has been adopted by the Wieckowskis, in part because "Marcin remains devoted to [their] family," but also because Mr. Jakacki "does not have a relationship with his relatives in Poland." Stella Wieckowski Letter, Exhibit 5; Stanley Wieckowski Letter, Exhibit 4.

Although his "relationship with his parents is very limited," Mr. Jakacki "maintain[s] a good relationship with his grandmother . . . who has lived here [in the United States] for over ten years." Lilian Jakacki Letter, Exhibit 1. Mr. Jakacki's grandmother resides in Brooklyn, and he sees her at least once a week, if not twice, in addition to "bring[ing] her over to [the Wieckowski's] home" during the holidays. *Id*. Also in the United States, Mr. Jakacki has a great aunt who he sees on occasion. *Id*.

Accordingly, the stark contrast between Mr. Jakacki's essentially non-existent relationship with his family members and child in Poland, and the enduring bond between Mr. Jakacki, his wife and her family, and his own grandmother, who lives in Brooklyn, is such that there is no doubt where Mr. Jakacki's loyalties are, nor is it difficult to understand the Wieckowski's ardent support of an individual who has been part of their family for several years.

### 3. *The Wieckowskis Continue to Pledge Their Full Emotional and Financial Support of Mr. Jakacki*

As a valued and true member of their family, Lilian's siblings and mother have already undertaken to support Mr. Jakacki in any way necessary during this ordeal. The faith that Lilian's family has in Mr. Jakacki was established over many years, and despite the strain of recent events, remains unshaken: "[Marcin] has always gone the extra mile for our family and we are ready to go the extra mile for him . . . [h]e is a good person with a big heart . . . [and] I do not believe he is capable of hurting us." Stella Wieckowski Letter, Exhibit 5. His niece Constance agrees, writing that "[b]ecause he has always been so devoted to [them], [they] are here for him and support him wholeheartedly." Constance Hupalo Letter, Exhibit 6.[7]

In demonstration of the strength the family's commitment to continue to support Mr. Jakacki, Elizabeth Wieckowski is "paying the retainer for his legal counsel" and has volunteered "to co-sign[] Marcin's bond." Elizabeth Wieckowski Letter, Exhibit 7. In addition, as set forth

---

[7] Ms. Hupalo was willing to co-sign Mr. Jakacki's bond, but was not proposed in light of her status as a stay at home mother and full time student, as she would not necessarily qualify as a Financially Responsible Person.

**post**, his mother-in-law, Jadwiga, has taken a line of credit of $100,000 to cover Mr. Jakacki's additional legal fees, as well as volunteered to post her home to secure his release if necessary. Furthermore, Mr. Jakacki's mother-in-law, his brother-in-law, Stanley, his sister-in-law, Stella, and his niece, Josephine Hupalo, are all among those prepared to co-sign Mr. Jakacki's bond if the Court sets conditions upon which Mr. Jakacki could be released on bail.

The family's firm resolution to stand by Mr. Jakacki, despite his infidelity, is creditable to their understanding of the circumstances that contributed to his indiscretion, primarily the couple's agonizingly stressful struggle to conceive a child. They "dreamed about having a family," and "tried right away to have a child." Lilian Jakacki Letter, Exhibit 1. From Jadwiga's perspective, "Marcin and Lilian desperately wanted to have" children, and "[t]he fact that they couldn't . . . was heartbreaking." Jadwiga Wieckowski Letter, Exhibit 3.

From inside the marriage, the unsuccessful attempts to conceive took a severe emotional toll on Lilian: "[s]omehow you feel inadequate or undeserving or something less when you can't conceive . . . [and a]s a result, I began to turn inwards and push Marcin away." Lilian Jakacki Letter, Exhibit 1. Also difficult was the effort to remain optimistic, "especially when [Marcin] saw the futility and frustration in [Lilian's] face." *Id*. Eventually, the two "c[a]me to terms with not having biological children," and decided to begin the process of adopting an older child, a decision admired by their family members. Elizabeth Wieckowski Letter, Exhibit 7.

However, despite the potentially devastating impact of infertility and infidelity, Lilian writes that these experiences have only deepened the bond between them:

> I know that Marcin and I do not have a perfect relationship, no marriage is ever perfect, but we have a strong one. Our troubles, with this case, my infertility and, most recently, his infidelity, have made us realize that we need each other more than ever. Despite the challenges we have faced as a couple, we love each other very deeply and I believe these hardships have actually made our relationship stronger.

Lilian Jakacki Letter, Exhibit 1.

Their family strongly agrees, writing that "[t]hese uphill battles have made them stronger as a couple," and therefore, the family "will provide any assistance that is required for Marcin to obtain bail." Stanley Wieckowski Letter, Exhibit 4. Their niece, Josephine, could see that "[g]etting over those struggles and forgiving one another has clearly made them even stronger as a couple." Josephine Hupalo Letter, Exhibit 2. As Stella explains, they all "appreciate that people make mistakes," and "[i]f Lilian can forgive him, and [they] believe she has, . . . as a family [they] forgive him as well." Stella Wieckowski Letter, Exhibit 5.

The family's assurance that "their marriage is strong enough to survive the hardships they have faced as a couple" arises from years of watching the two "face[] . . . challenges head-on and realistically." Elizabeth Wieckowski Letter, Exhibit 7; Stanley Wieckowski Letter, Exhibit 4. Echoing the sentiment of her entire family, Josephine Hupalo writes that she "knows [her] Uncle Marcin well" and he "would never think of leaving [them] or hurting [them] in any way" because she and her family "are his family." Josephine Hupalo Letter, Exhibit 2.

Consequently, the many years that Mr. Jakacki has spent as a member of the Wieckowskis, forms the solid foundation on which the family relies to confidently maintain their unwavering support of Mr. Jakacki, both emotionally and financially.

**C. *Mr. Jakacki's Does Not Have Access to Significant Financial Resources That Could Permit Flight***

While Mr. Jakacki's strong ties to the U.S., and, by contrast, weak ties to Poland, on their own, indicate that Mr. Jakacki does not present a risk of flight to Poland, or elsewhere, Mr. Jakacki also does not possess the means to flee. Although the Court relied on representations in Lilian Jakacki's financial affidavit about the couple's finances to reach the conclusion that "Mr. Jakacki had access to significant financial resources and thus the wherewithal to flee," that affidavit omitted pertinent information regarding the assets listed and the couple's overall financial solvency.

In fact, with the exception of Mr. and Mrs. Jakacki's home – worth $2.4 million but encumbered by a $1 million confession of judgment from the equity in the home used to secure Mrs. Jakacki's bond and an $870,000 mortgage – and from which the couple proposes to use their remaining approximately $530,000 in equity as collateral to secure Mr. Jakacki's bond, Mr. and Mrs. Jakacki do not have other significant assets which would give them the means to flee.

Although the couple possesses two cars, a Porche and a Land Rover, they do not own either outright. Rather, they have more than $67,000 left to pay off on the Land Rover, and $6,000 left to pay on the Porche. *See* Loan Statements, attached hereto as Exhibit 8. The couple also bears the burden of substantial credit card debt, totaling over $70,000. *See* Credit Card Statements, attached hereto as Exhibit 9.

**IV. *Mr. Jakacki and His Wife Along with Members of His Wife's Family Are Prepared to Post Substantial Security and/or Co-Sign A Bond That Would Be More than Sufficient to Assure Mr. Jakacki's Presence at Future Court Appearances and Compliance with Any Conditions of Release***

Given the inaccuracies in the facts presented at Mr. Jakacki's November 3, 2015, bail hearing which led the Court to Order his detention, and the mandate pursuant to §3142(c)(1)(B), that a defendant be released "subject to the least restrictive further condition, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community," the Magistrate Court's initial determination that Mr. Jakacki could be released pursuant to a $1 million PRB co-signed by three financially responsible persons and secured by a home, along with the other conditions set therein, should be more than sufficient to warrant Mr. Jakacki's release. Nonetheless, in the event that the Court requires more, Mr. Jakacki proposes a bail package permitting his release on a PRB secured by real property, including the remaining $530,000 in equity in his and his wife's Greenwich home, and if necessary, the nearly $1.8 million in equity his mother-in-law, Jadwiga Wieckowski, holds in her Brooklyn home, and co-signed by up to five of his and his wife's closest relatives, whose information is set forth **post**, all of whom are U.S. citizens residing in the tri-state area, and have already been qualified by Pre-Trial Services as Financially Responsible Persons.[8]

The following individuals have committed to pledge assets and/or sign a bond for Mr. Jakacki's release:

**A.** ***Mr. Jakacki and His Wife, Lilian Jakacki***

As noted **ante**, Mr. Jakacki and his wife, Lilian, are prepared to post the remaining equity in their home located at 106 Porchuck Road, in Greenwich, Connecticut. The home has been appraised at approximately $2.4 million, with $530,000 in unencumbered equity available to collateralize Mr. Jakacki's bond, given that the remaining mortgage on the home is $870,000, and $1 million of their total equity in the home was posted to secure Lilian Jakacki's bond.

**B.** ***Mr. Jakacki's Mother-In-Law, Jadwiga Wieckowski***

Mr. Jakacki's mother-in-law, Jadwiga Wieckowski, who resides in Brooklyn, New York, earned her medical degree in Poland before emigrating to the United States in 1960, after which she worked in inner city hospitals and as a pediatrician, until she and her husband decided she should retire to care for their children on a full time basis. Her assets include her home, located at 146 South Third Street, in Brooklyn, New York, in which she has just shy of $1.8 million in equity as per a recent appraisal, taking into account the $100,000 line of credit she has recently obtained against the property, for the purposes of aiding in the payment of Mr. Jakacki's legal

---

[8] I have spoken with the Assistant United States Attorney Sidhartha Kamaraju and he has confirmed that the government does not object to qualifiying either Jadwiga or Stanley Wieckowski if Jadwiga Wieckowski's home is secured as part of the bail package.

fees (as well as her own daughter's legal fees, to the extent necessary).

In addition to serving as co-signer on Mr. Jakacki's bond, Mrs. Wieckowski is prepared to post her Brooklyn home, thus ensuring that the PRB will be fully collateralized.

**C. *Mr. Jakacki's Brother-In-Law, Stanley Wieckowski***

Stanley Weickowski has worked as an engineer at Superior Motion Control, Inc., formerly Superior Electromechanical, for over 30 years and is prepared to co-sign Mr. Jakacki's bond. He resides in Brooklyn with his mother, Jadwiga, and earned approximately $79,000 in 2014, and this year to date, has earned approximately $114,000, including bonuses.

**D. *Mr. Jakacki's Sister-In-Law, Elizabeth Wieckowski***

Elizabeth Wieckowski, who is also prepared to co-sign Mr. Jakacki's bond, has been a patent attorney in New York for almost twenty years, registered to practice before the U.S. Patent and Trademark Office, and currently works as an associate in the firm of Ostrolenk Faber, LLP. She resides at 263 Harwood Avenue in Sleepy Hollow, New York, and earns a yearly total income of roughly $122,000. Ms. Wieckowski was previously approved as a financially responsible person for the purposes of co-signing her sister, Lilian's bond, and the government has informed defense counsel that she does not need to be re-interviewed. She has also committed personal funds to pay for Mr. Jakacki's legal representation.

**E. *Mr. Jakacki's Sister-In-Law, Stella Wieckowski***

Stella Wieckowski, also Mr. Jakacki's sister-in-law, resides at 15 Fairway Drive in Setauket, New York, and is similarly prepared to co-sign his bond. She is employed at Appropriated Funds, and earns a net yearly income of roughly $86,000. Additionally, Ms. Wieckowski has approximately $23,000 in her savings account. Like her sister, Elizabeth, was previously approved as a financially responsible person for the purposes of co-signing her sister, Lilian's bond, and the government has informed defense counsel that she does not need to be re-interviewed.

**F. *Mr. Jakacki's Niece, Josephine Hupalo***

Josephine Hupalo resides in Setauket, New York, and is employed at Apple Honda, in Riverhead, New York, where she earns a net income of approximately $36,000 per year. If necessary, she has committed to co-signing Mr. Jakaki's bond, as has been qualified already by the government in relation to her co-signing her aunt Lilian Jakacki's bond.

If the Court sets bail and the above-described individuals are approved to act as sureties and/or co-sign the bond, several will be present at Mr. Jakacki's bail hearing and are prepared to sign the bond that same day.

### V. *Mr. Jakacki's Sixth Amendment Right to Counsel and to Prepare His Defense Will be Impeded if He Is Not Afforded Bail In This Case*

As a result of Mr. Jakacki's difficulties writing in English, Mr. Jakacki is unable to avail himself of e-mail, or even letter writing, the primary means of communication between detained individuals and defense counsel. Thus, Mr. Jakacki, due to his limited ability to write in English is at a uniquely greater "informational disadvantage" than the typical defendant, and continued detention would seriously encroach on his right to counsel and to prepare a defense pursuant to the Sixth Amendment.

Indeed, as this Court noted in a recent article, communication between defense counsel and client is essential to the preparation of a defense, because "[i]n the majority of criminal cases, a defense lawyer only meets her client when or shortly after the client is arrested, so that, at the outset, she is at a considerable informational disadvantage to the prosecutor." Judge Jed S. Rakoff, "Why Innocent People Plead Guilty," *New York Review of Books* (Nov. 20, 2014). Moreover, when "the client is detained, the defense lawyer has only modest opportunities, within the limited visiting hours and other arduous restrictions imposed by most jails, to interview her client and find out his version of the facts." *Id*.

As the already limited opportunities to consult with a detained client are further diminished if an inmate's ability to communicate with counsel via e-mail is eliminated, Mr. Jakacki's continued detention would improperly burden his Sixth Amendment right to counsel and to prepare a defense.

Furthermore, Mr. Jakacki's English language deficiencies will significantly handicap his review of significant amounts of discovery in this case on his own, and his ability to provide relevant information to counsel, who do not speak or read Polish. As a consequence, continued detention would make it nearly impossible for Mr. Jakacki to review discovery in any meaningful way outside the physical presence of his attorney, which would be incredibly difficult to coordinate if he were detained pending trial, both from a cost perspective and a logistical one.

Accordingly, given the impediment to communication caused by Mr. Jakacki's limited ability to write in English, continued detention would constitute an undue burden on Mr. Jakacki's right to counsel and to prepare a defense pursuant to the Sixth Amendment, as well as an unnecessarily complicated and costly burden, and should be taken into account by the Court in determining Mr. Jakacki's application for bail.

**Conclusion**

Accordingly, for all the reasons set forth above, it is respectfully submitted that the Court should grant bail in Mr. Jakacki's case, and impose any restrictive conditions the Court deems necessary.

Respectfully submitted,

Lindsay A. Lewis

LAL/
Encls.

cc: Sidhartha Kamaraju & Louis Anthony Pellegrino
Assistant United States Attorneys