UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

UNITED STATES OF AMERICA  :  15 Cr. 727 (JSR)

    - against -   :  (Electronically Filed)

MARCIN JAKACKI,     :

      Defendant.  :
-------------------------------------------------------X


# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## MARCIN JAKACKI'S PRE-TRIAL MOTIONS


           LINDSAY A. LEWIS
           JOSHUA L. DRATEL, P.C.
           29 Broadway, Suite 1412
           New York, New York 10006
           (212) 732-0707

           *Attorneys for Defendant Marcin Jakacki*


– Of Counsel –

Lindsay A. Lewis
Whitney Schlimbach

TABLE OF CONTENTS

Table of Contents.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT

POINT I

THE COURT SHOULD COMPEL THE
GOVERNMENT TO PRODUCE THE
REQUESTED BILL OF PARTICULARS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.      *A Bill of Particulars Is Necessary for the Preparation of Mr. Jakaki's Defense.* . . . . . . . 3

        1.      *The Government Must Particularize the
                Transactions Against Which Mr. Jakacki Must Defend.*. . . . . . . . . . . . . . . . . . . . 4

        2.      *The Government Must Identify the
                Parties Involved In The Alleged Conspiracy.*. . . . . . . . . . . . . . . . . . . . . . . . . . . 7

B.      *The Requested Particulars.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

POINT II

THE COURT SHOULD GRANT MR.
JAKACKI'S REQUEST TO JOIN IN HIS
CO-DEFENDANTS' MOTIONS TO THE
EXTENT THEY INURE TO HIS BENEFIT
AND FOR LEAVE TO FILE ANY
ADDITIONAL MOTIONS COUNSEL IS
NOT AWARE OF AT THE TIME OF FILING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Conclusion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

TABLE OF AUTHORITIES

CASES

*United States v. Bin Laden (El-Hage)*, 92 F. Supp.2d 225 (S.D.N.Y. 2000).. . . . . . . . . . . . 4-5, 7

*United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . 2, 5-6

*United States v. Davidoff*, 845 F.2d 1151 (2d Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

*United States v. Mostafa*, 965 F.Supp.2d 451 (S.D.N.Y. 2013). . . . . . . . . . . . . . . . . . . . . . 5, 7

*United States v. Nachamie*, 91 F. Supp.2d 565 (S.D.N.Y. 2000). . . . . . . . . . . . . . . . . . . . . . . 2

STATUTES

18 U.S.C. §2.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. §1956.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. §1956(h). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. §3500.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

21 U.S.C. §841(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21 U.S.C. §841(b)(1)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21 U.S.C. §846.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Local Criminal Rule 16.1.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Introduction**

This Memorandum of Law is submitted on behalf of defendant Marcin Jakacki, in support of his pre-trial motions seeking the following relief:

I.  a Bill of Particulars; and

II.  leave to join in any motions filed by his co-defendants, to the extent they inure to his benefit, and leave to file any further motions that may become necessary.

Accordingly, for the reasons set forth below, it is respectfully submitted that Mr. Jakacki should be granted the requested relief.

**Statement of the Facts**

Mr. Jakacki, along with his wife, Lillian Wieckowski, and others (both identified and unidentified), is charged with participating in a single overarching conspiracy (Count I) to illegally distribute and possess with intent to distribute more than 500,000 pills of Oxycodone, a schedule II controlled substance, in violation of 21 U.S.C. §§841(a)(1), (b)(1)(C), & 846. *See* Indictment (attached to the Declaration of Lindsay A. Lewis, Esq., as Exhibit 1).

The Indictment alleges that Mr. Jakacki "conspired to dispense hundreds of thousands of oxycodone pills either without any prescription or on the basis of fraudulent prescriptions . . . for which [Mr. Jakacki and his wife] collected hundreds of thousands of dollars in cash payments." *Id*., at ¶ 2- 3.

In connection with the above-alleged conduct, Mr. Jakacki is also charged, along with his wife, and others unnamed, with conspiracy to launder hundreds of thousands of dollars in cash proceeds derived from the illegal oxycodone distribution described in Count I, in violation of 18 U.S.C. §1956(h) and with money laundering, in violation of 18 U.S.C. §§1956 and 2, in regard to

the purchase of his Greenwich, Connecticut home.   Mr. Jakacki is also subject to forfeiture

allegations, and a substitute assets provision, in the alternative.  Mr. Jakacki has entered a plea of

not guilty to charges against him.

### ARGUMENT

### POINT I

### THE COURT SHOULD COMPEL THE  GOVERNMENT TO PRODUCE THE REQUESTED BILL OF PARTICULARS

As the Second Circuit has explained, a Bill of Particulars:

> is appropriate to permit a defendant "to identify with sufficient
> particularity the nature of the charge pending against him, thereby
> enabling defendant to prepare for trial, to prevent surprise, and to
> interpose a plea of double jeopardy should he be prosecuted a
> second time for the same offense."

*United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988), *quoting United States v.*

*Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).  *See also United States v. Nachamie*, 91 F.

Supp.2d 565, 570 (S.D.N.Y. 2000) (*quoting Bortnovsky*, 820 F.2d at 574) (ordering a Bill of

Particulars).

Without further elucidation of the generic descriptions of the charges against him in the

Indictment – including specific prescriptions and transactions that the government intends to

introduce at trial, especially in terms of those that the government asserts occurred before

September 2015 – as well as the identities of alleged co-conspirators, Mr. Jakacki will be unable

to prepare his defense as he will not be able to isolate the specific transactions that he must

defend against, and the various witnesses and alleged participants.  A criminal trial should not be

a game, and least of all a guessing game.  Thus, Mr. Jakacki's request for a Bill of Particulars

should be granted.

**A.**     *A Bill of Particulars Is Necessary for the Preparation of Mr. Jakaki's Defense*

Absent a bill of particulars, Mr. Jakacki will proceed to trial without sufficient notice of precisely what charges he faces, and without ample time to identify and locate witnesses and/or conduct a meaningful investigation of the offenses alleged.  The Indictment alleges that Mr. Jakacki "conspired to dispense *hundreds of thousands* of oxycodone pills either without any prescription or on the basis of fraudulent prescriptions" in exchange "for which . . . JAKACKI [and his wife] collected *hundreds of thousands of dollars* in cash payments," and that Mr. Jakacki "conspired with others to launder hundreds of thousands of dollars in cash proceeds derived from the illegal oxycodone distribution[.]"  *See* Indictment, at ¶¶ 2, 3, 35  (emphasis added).

Moreover, it alleges that he conspired to do over the course of five years, "between in or around at least 2010 and in or around October 2015," and with individuals that are not identified in the Indictment or elsewhere in the discovery.

As a result, a Bill of Particulars is necessary to inform Mr. Jakacki of the most basic and critical details of the charged conspiracy, including, in key part (1)  particularization and enumeration of specific allegedly fraudulent oxycodone transactions prior to September 2015;  (2) specific financial transactions that were alleged to have been falsely represented to the bank(s) and (3)  the identities of the parties involved in the transactions alleged.  If Mr. Jakacki is not provided with a Bill of Particulars, his ability to prepare his defense will be irremediably impaired.

3

1.    ***The Government Must Particularize the***
***Transactions Against Which Mr. Jakacki Must Defend***

The Indictment in Mr. Jakacki's case is scant on details prior to September 2015 (the last two months of an alleged five year long conspiracy) and speaks only in broad and undefined terms, thus boiling a multi-transactional case with numerous players down to sweeping generalities that provide no specifics and no roadmap to the charges Mr. Jakacki will be required to defend against. *See, e.g.,* Indictment at ¶ 2 ("[Mr. Jakacki] conspired to dispense *hundreds of thousands of oxycodone pills* either without any prescription or on the basis of fraudulent prescriptions" ); ¶ 3 ("[Mr. Jakacki] unlawfully distributed *more than 500,000 tablets of oxycodone*, for which [he and his wife] collected *hundreds of thousands of dollars* in cash payments" ); ¶ 11 ("of the approximately 760,000 tablets of oxycodone ordered during the [on or about January 1, 2011 and on or about June 4, 2013 DEA] Audit Period more than 320,000 tablets had been dispensed on the basis of a prescription; however *with respect to at least hundreds of these prescriptions* . . . the prescriptions were falsified "); ¶ 43 ("the defendants engaged in or directed financial transactions involving hundreds of thousands of dollars-worth of illegal proceeds from the narcotics trafficking offense"). Descriptions in the Indictment routinely omit necessary details such as (1) dates, times, and precision as to the volume of the transactions that occurred; and (2) the parties involved in transactions.

In *United States v. Bin Laden (El-Hage)*, 92 F. Supp.2d 225 (S.D.N.Y. 2000), Judge Sand explained that "a bill of particulars [was] necessary . . . to permit the Defendants to prepare a defense and to prevent prejudicial surprise at trial," based, in part, on the Court's conclusion that "several of the allegations contained in the 'Overt Acts' section of the Indictment are cast in terms

4

that are too general, in the context of [that] particular case, *to permit the Defendants to conduct a meaningfully directed investigation of the relevant facts and circumstances and be prepared to respond to the charges*." *Id.*, at 235 (emphasis added).

In Mr, Jakacki's case, as in *Bin Laden*, the transactions described in the Indictment as a whole lack specificity, and without the details requested by Mr. Jakacki, such as dates, times, participants, and particularization of transactions alleged, it would be impossible for Mr. Jakacki "to conduct a meaningfully directed investigation."

Moreover, if Mr. Jakacki is not notified of these particulars sufficiently in advance of trial, he will be unable, at the eleventh hour, to mount a defense based on these witnesses, transactions, and/or other information. Under such circumstances, his ability to prepare and present a defense would be irreparably impaired.

Nor does the voluminous discovery in this case provide a roadmap for the alleged transactions that would obviate the need for a bill of particulars.  As stated last year in *United States v. Mostafa*, 965 F.Supp.2d 451, 465 (S.D.N.Y. 2013), *"*a bill of particulars is . . . unnecessary when the Government has produced materials in discovery concerning the witness and other evidence" and "[t]hus, in determining whether to order a bill of particulars a court must examine the totality of the information available to the defendant, both through the indictment and through pre-trial discovery." *See also Bin Laden*, 92 F. Supp.2d at 233.

*Bortonovsky* is instructive in conducting this examination in Mr. Jakacki's case.  The defendant in *Bortonovsky* was faced with a similar situation regarding the Indictment and discovery produced to that which Mr. Jakakci faces here: "[n]owhere in the indictment . . . d[id] the Government specify the dates of the staged burglaries [alleged in the Indictment] or enumerate

5

which of numerous documents [were the ones the government alleged in the Indictment had been] falsified." 820 F.2d at 574.  Nonetheless, the government claimed that "it fulfilled its obligation to inform [defendants] of the charges by being explicit in the indictment and by providing over 4,000 documents to defense counsel during discovery." *Id*.

In *Bortonovsky*, the Court found that the defendants "were hindered in preparing their defense by the district court's failure to compel the Government to reveal crucial information: the dates of the fake burglaries and the identity of the three fraudulent documents." *Id*.  The Court also found that the "Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged." *Id*., at 575. The Court in *Bortonovsky* ultimately concluded that as a result of the government's failure to reveal crucial information and the district court's failure to require it, "[i]n effect, the burden of proof impermissibly shifted to [the defendants]." *Id*.

If Mr. Jakacki is not provided a Bill of Particulars in this case he will suffer the same fate. He cannot possibly be expected to parse through thousands of documents and records produced in discovery in the hopes that he will guess correctly as to the transactions that the government intends to put before the jury; nor does the veiled nature of the case itself even allow for such an inquiry to occur.

Indeed, while the government has asserted to defense counsel that it has particularized bank transactions by identifying a list of transactions which may or may not be fraudulent and which they may or may not introduce at trial, and that it has particularized oxycodone transactions by providing the 2013 DEA Audit records which contain hundreds of thousands of transactions

6

the government believes are fraudulent (as well as date, doctor and patient information for the related prescriptions), and will, on a rolling basis provide the same sort of information as to any post-2013 Audit search warrant returns it deems to be fraudulent, this is not sufficient.  Simply narrowing the field without specifying transactions the government seeks to use does not remove the guesswork or allow for adequate defense preparation.  Moreover, alerting counsel on a rolling basis to previously unknown allegedly fraudulent transactions as they are discovered, presumably all the way up until trial – given that the government has not provided a time frame for doing so – also frustrates Mr. Jakacki's ability to prepare a defense.  With regard to fraudulent prescriptions from after the 2013 Audit, the government must either devote the resources necessary to particularize any and all of those records now, or the Court must limit the government at trial to what they believe to be fraudulent and can particularize at this point.

Accordingly, "to avoid surprise at trial and give [Mr. Jakacki] sufficient information to meet the charges against him," the very purpose of a bill of particulars, the Court must Order the government to provide the requested Bill of Particulars to Mr. Jakacki.  *See Mostafa*, 965 F.Supp.2d at 465, *citing Bin Laden*, 92 F. Supp.2d at 233.

### 2.  *The Government Must Identify the Parties Involved In The Alleged Conspiracy*

The identification of the specific persons involved in the transactions alleged, and in the Indictment generally, are equally critical to preparation of Mr. Jakacki's defense.  The Indictment fails to identify critical parties, such as co-conspirators.  Nor are these individuals identified in discovery.  The government has also expressly stated to defense counsel that it will not provide a list of co-conspirators.

In the absence of a bill of particulars providing the identities of these many other

individuals, defense counsel will not have ample time to identify and locate necessary witnesses, and to conduct its own independent investigation.

It should also be noted that material disclosed pursuant to discovery demands and 18 U.S.C. §3500, do not serve as a substitute for a Bill of Particulars.  *See, e.g.,  Davidoff*, 845 F.2d at 1155.  This is especially true with regard to the identities of the witnesses, and the transactions discussed **ante**, since late notice (such as via production of "3500 material") might require postponement of the trial in order to allow Mr. Jakacki's defense team to pursue the evidence.

**B.**     ***The Requested Particulars***

The Court should compel the government to provide the following particulars:[1]

1.     With respect to Count One, ¶ 1, please identify:

     a.     all locations encompassed by the term "elsewhere"; and

     b.     by name the individuals denoted as "others known and unknown" alleged to have conspired with the defendants.

2.     With respect to Count One, ¶ 2, please identify by name the "others" to whom pills were allegedly distributed.

3.     With respect to Count One, ¶ 3, please identify:

     a.     the date on which it is alleged that Mr. Jakacki first became a member of the conspiracy charged in Count One; and

     b.     the specific dates and amounts of each of the "cash payments" alleged to have been collected.

4.     With respect to Count One, ¶ 9, please identify:

---

[1]   Counsel requested a Bill of Particulars by letter from the government February 9, 2015, and attempted to informally resolve this discovery matter as required by Local Criminal Rule 16.1.  The government verbally conveyed to defense counsel certain information that satisfied particular demands.  The remaining requests, which the government has indicated it will not respond to, are those that are addressed in this motion.

      a.      the source of the allegation that MW&W "was the leading purchaser of oxycodone tablets in its zip code" between 2010 and 2012; and

      b.      the name and location of the second highest "purchaser of oxycodone tablets" and the source of that information.

5.      With respect to Count One, ¶ 10, please identify the times, dates, locations and individuals involved in the specific transactions in which oxycodone was allegedly "distributed without any prescription."

6.      With respect to Count One, ¶ 11, please identify:

      a.      the "fraudulent prescriptions"; and

      b.      the names of the physicians and the locations of the "physicians' offices around New York City" from which "prescription forms were stolen."

7.      With respect to Count One, ¶ 12, please identify:

      a.      the times, dates, locations and individuals involved in the "times" that "prescriptions were made out in false names"; and

      b.      the times, dates, locations and individuals involved in the "times" that "WIECKOWSKI sold oxycodone to individuals" without prescriptions.

8.      With respect to Count One, ¶ 13, please identify:

      a.      the "others' names" used by Robert Cybulski on "multiple prescriptions"; and

      b.      the names and specific roles of "those acting at [WIECKOWSKI'S] direction."

9.      With respect to Count One, ¶ 15, please identify:

      a.      the names and locations of the "physicians' offices" from which "blank prescription forms" were allegedly obtained;

      b.      by name the "certain individuals" without proper prescriptions to whom oxycodone was allegedly distributed; and

      c.      the "non-controlled substances" included in the allegedly "fraudulent prescriptions."

9

10.    With respect to Count One, ¶ 16, please identify all of the "extensive measures" allegedly taken, and the date(s), time(s), and manner in which these measures were taken.

11.    With respect to Count One, ¶ 18, please identify:

      a.    the name and location of the "physician's office" at which the undercover DEA agent purported to work, and in what capacity.

12.    With respect to Count One, ¶ 20, please identify all locations encompassed by the term "elsewhere."

13.    With respect to Count One, ¶ 21, please specify the identities of "others known and unknown."

14.    With respect to Count Three, ¶ 35, please identify:

      a.    the date on which it is alleged that Mr. Jakacki first became a member of the conspiracy charged in Count Three;

      b.    the role, if any, that Mr. Jakacki allegedly played in each and any transaction;

      c.    by name the "others" with whom the defendants are alleged to have conspired;

      d.    the basis for the allegation that the cited "cash proceeds" were "derived from the illegal oxycodone distribution described in Count One;" and

      e.    the specific details including dates, times, locations, account numbers and dollar amounts involved in the "series of coordinated cash and check deposits, and wire transfers" alleged to constitute a violation pursuant to Count Three.

15.    With respect to Count Three, ¶ 36, please identify:

      a.    by name the "others" with whom Mr. and Mrs. Jakacki were alleged to have been working; and

      b.    the specific details including dates, times, locations, account numbers and dollar amounts involved in the referenced "series of financial transactions."

16.    With respect to Count Three, ¶ 37, please identify:

a.  the specific dates encompassed by the phrase "a period of several months in or about 2012";

b.  the names of all co-conspirators alleged to have made deposits into "Account-1;" and

c.  each bank deposit allegedly "falsely represented to Bank-1" as "among other things, 'wedding gifts,' 'loan repayments,' or 'gifts from husband'" which was "[i]n reality . . . proceeds from the illegal oxycodone distribution business the defendants operated."

17.  With respect to Count Three, ¶ 39, please identify:

a.  all locations encompassed by the term "elsewhere"; and

b.  by name the individuals denoted as "others known and unknown" alleged to have conspired with the defendants.

18.  With respect to Count Three, ¶ 40, please identify by name the "others known and unknown."

19.  With respect to Count Three, ¶ 41, please identify by name the "others known and unknown.

20.  With respect to Count Three, ¶ 42, please identify by name the "others known and unknown."

21.  With respect to Count Four, ¶ 44, please identify:

a.  the specific nature, time, date and location of each of the "financial transactions" alleged to have involved "illegal proceeds'" and,

b.  the role, if any, that Mr. Jakacki allegedly played in each and any transaction.

22.  With respect to Count Four, ¶ 45, please identify all locations encompassed by the phrase "elsewhere."

23.  With respect to the forfeiture allegations, at ¶¶ 59-60, please identify the value and nature of the "property" not already identified, that is subject to forfeiture and basis upon which it is subject to forfeiture.

24.  With respect to the forfeiture allegations, at ¶ 61, please identify:

11

a.    the value and nature of the "property" not already identified, that is subject to forfeiture and basis upon which it is subject to forfeiture;

b.    the value and nature of any "real" property;

c.    the value and nature of any "personal" property; and

d.    the value and nature of "any property traceable to such property" and the precise "property" it is "traceable to."


## POINT II

**THE COURT SHOULD GRANT MR. JAKACKI'S REQUEST TO JOIN IN HIS CO-DEFENDANTS' MOTIONS TO THE EXTENT THEY INURE TO HIS BENEFIT AND FOR LEAVE TO FILE ANY ADDITIONAL MOTIONS COUNSEL IS NOT AWARE OF AT THE TIME OF FILING**

Mr. Jakacki respectfully seeks leave to join in his co-defendants' motions, to the extent that he is not aware of them at the time of this filing, and/or that they inure to his benefit.[2]

In addition, Mr. Jakacki respectfully requests permission to file any additional motions that may become necessary as a result of further discovery and/or disclosures by the government.

---

[2] While Mr. Jakacki is aware of his co-defendant Robert Cybulski's motion for severance, given the early stage of the case, Mr. Jakacki does not intend to join in this motion at this time but respectfully reserves the right to do so if and when such a motion becomes necessary.

12

**Conclusion**

Accordingly, for all the reasons set forth above, it is respectfully requested that the Court grant Mr. Jakacki's pre-trial motions for a bill of particulars, leave to join in his co-defendants' motions to the extent they inure to his benefit, and for leave to file any further motions that may become necessary, in their entirety.

Dated: 11 February 2016
      New York, New York

                               Respectfully submitted,

                                /S/ Lindsay Lewis
                               LINDSAY A. LEWIS
                               JOSHUA L. DRATEL, P.C.
                               29 Broadway, Suite 1412
                               New York, New York 10006
                               (212) 732-0707

                               *Attorneys for Defendant Marcin Jakacki*

– Of Counsel –

Lindsay A. Lewis
Whitney Schlimbach

13