G2PKJAKC                      CONFERENCE

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          15 CR 727 (JSR)

5    LILIAN JAKACKI, MARCIN
     JAKACKI, MW&W GLOBAL
6    ENTERPRISES, INC., EUROPEAN
     APOTHECARY, INC., ROBERT
7    CYBULSKI,

8              Defendants.

9    ------------------------------x

10                                        New York, N.Y.
                                          February 25, 2016
11                                        2:10 p.m.

12
     Before:
13
                         HON. JED S. RAKOFF,
14
                                          District Judge
15

16                        APPEARANCES

17
     PREET BHARARA,
18        United States Attorney for the
          Southern District of New York
19   SIDHARDHA KAMARAJU
     LOUIS PELLEGRINO
20        Assistant United States Attorneys

21   ADAM PERLMUTTER
          Attorney for Defendants Lilian Jakacki, MW&W Global
22   Enterprises, Inc. and European Apothecary, Inc.

23   LINDSAY A. LEWIS
     WHITNEY G. SCHLIMBACH
24        Attorneys for Defendant Marcin Jakacki

25   JOHN RAPAWY
          Attorney for Defendant Robert Cybulski

G2PKJAKC                           CONFERENCE

1      THE DEPUTY CLERK:  It is February 25th, 2016.  This is

2  United States versus Jakacki, et al., Docket No. 15 CR 727,

3  defendants 1, 2, 3, 4 and 5.  Will everyone please be seated

4  and will the parties please identify themselves for the record.

5      MR. KAMARAJU:  Good afternoon, your Honor.  Sidhardha

6  Kamaraju and Louis Pellegrino, on behalf of the government.

7      THE COURT:  Good afternoon.

8      MR. PELLEGRINO:  Good afternoon.

9      MS. LEWIS:  Good afternoon, your Honor.  Lindsay

10  Lewis, on behalf of Marcin Jakacki, and with me is Whitney

11  Schlimbach, same office.

12      MR. RAPAWY:  Appearing for the defendant Mr. Robert

13  Cybulski, who's standing to my right, John Rapawy.  Good

14  afternoon, your Honor.

15      THE COURT:  Good afternoon.

16      MS. LEWIS:  I'd just like to add, your Honor, I'm

17  under the impression from Lilian Wieckowski that her attorney,

18  Adam Perlmutter, may have thought the conference was at 4:30

19  today.  So I've tried to contact him; I was just out in the

20  hall trying to reach him.

21      THE COURT:  Well, we'll proceed and hopefully he'll

22  show up by 4:30, but everyone else knew this was for

23  4:00 o'clock so I'm not sure why he did you not, but in any

24  event, we'll go forward.

25      A number of motions have been filed.  I wanted to get

G2PKJAKC                         CONFERENCE

1    what the government's position is on the suppression motion.

2                MR. KAMARAJU:  Your Honor, the government's view of

3    the suppression motion, actually, is likely moot because this

4    is one of those iPhone 6s that has sort of been in the news

5    recently; we're not able to access it in any event, so there's

6    no evidence to be suppressed.

7                To the extent there were any evidence, we think that

8    the suppression motion would fail.  The defense --

9                THE COURT:  But here's the point:  You can't leave

10   your adversary hanging.  Either you have to represent that you

11   are not going to be introducing that evidence, in which case

12   it's all moot, or if you think there's even a possibility that

13   you're going to introduce it, then we either have to have a

14   suppression hearing or if you think it can be disposed of by a

15   briefing, we'll set a briefing schedule.

16               So which of those possibilities do you want to elect?

17               MR. KAMARAJU:  We don't believe we're going to be able

18   to get into the phone, so we won't use the --

19               THE COURT:  You won't use the evidence.  Okay, so that

20   motion is in effect granted but for the reason that the

21   evidence will not be used.

22               Now, there was a motion for a severance.  What's the

23   government's view of that?

24               MR. KAMARAJU:  The government thinks that that motion

25   should be denied, your Honor.

1          THE COURT:  Because?

2          MR. KAMARAJU:  For several reasons.  One, the policy,

3   generally, of trying defendants together, particularly when

4   they're indicted and, as in this case, are charged with a

5   common cause or conspiracy, I think, favors or counsels in

6   favor of denying the motion for severance, in particular, I

7   think the arguments that Mr. Cybulski has raised, specifically,

8   that there would be evidence that he believes may be

9   prejudicial to him and that he bears some lower level of

10  culpability, and, third, that he is not charged in particular

11  crimes none of those warrant severance.

12          First, with respect to the evidence:  Mr. Cybulski is

13  charged in a common narcotics conspiracy, as your Honor is

14  aware, with both Lilian and Marcin Jakacki.  As with any normal

15  narcotics conspiracy, evidence of the conspiracy broadly and of

16  his coconspirators' action would be admissible against him even

17  if he had a separate trial.  So, the concept of spillover

18  prejudice from those aspects of the government's case, I think,

19  can be disposed of readily.

20          Then with respect to varying layers of culpability,

21  the Second Circuit has recognized that that alone is not

22  sufficient to warrant severance because inevitably in a

23  multidefendant trial you're going to have varying levels of

24  culpability.  And in this case, as is alleged in the

25  indictment, while the Jakackis may have been sort of the

suppliers, as in any narcotics conspiracy, you need suppliers

and you need purchasers and distributors.  And Mr. Cybulski is

alleged to have been one of, if not, the largest of the

purchasers, so we don't think as -- you're not trying the Chapo

Guzman with a courier on the street; we're trying members of

the conspiracy who are all within the same ballpark of

culpability and so we don't think there's an issue there with

respect to sort of any prejudice flowing from that.

           Finally -- and this is a point that defense counsel

made in their motion -- the fact that the Jakackis, and in

particular Lilian Jakacki, is charged with some crime such as

Medicare or health care benefits fraud, that Mr. Cybulski is

not, that also is not a basis for severance.  In particular,

the Court can cure any potential prejudice with an instruction

by, one, obviously going through the various counts, as I know

your Honor will, and directing the jury that they are to

consider the defendants' guilt individually and the evidence

with respect to each defendant individually.  So we don't think

the fact that there's a charge against one defendant that's not

brought against another warrants severance.  If it did, there

would be any number of trials that could not be conducted

together.

           So, for those reasons, the government doesn't think

there's a basis to sever, particularly in light of the

well-established preference to try defendants charged with

1    common crimes in the same trial.

2            THE COURT:  All right, anything defense counsel wanted

3    to say on that issue?

4            MR. RAPAWY:  No, your Honor.  I'll rely on what I put

5    in my papers.  I just thought that the really interesting

6    issue, your Honor, is something that, a lot of times as defense

7    counsel we have to speculate as to what a potential prejudice

8    would be.  In this case, a few days before the motion was due,

9    Mr. Cybulski called me up in a panic because he had gone to his

10   local pharmacy and he tried to fill a prescription and the

11   pharmacist said that he was denied.

12           I, of course, got in touch with the pharmacy and they

13   told me that he was denied because of an office of Medicaid

14   investigation into his role in a billing scheme to defraud

15   Medicaid.  He then provided me with a letter that he had

16   received in the mail.  So we actually see, your Honor, a case

17   where I don't have to make an argument that there could be a

18   prejudice; there's already been a prejudice, it's something

19   that's happened, through no fault of Mr. Cybulski.  The Office

20   of the Medicaid Inspector could not discern that Mr. Cybulski

21   was not charged in any sort of a scheme to bill fraudulently

22   the Medicaid unit and yet they lumped him into that part of the

23   conspiracy.  And when I actually spoke to them to try to

24   clarify that, they said, well, he's charged with fraud,

25   Medicaid fraud.  I said, but he's not.  I said, a more careful

1    inspection of the indictment will show you that he's only

2    charged in Count One.

3            And after I got them on the telephone and after I

4    spent several hours with them -- excuse me my voice, I'm just

5    getting over an illness, but after I spent several hours with

6    them on the telephone, they then came to their senses, they

7    rescinded that denial and they reinstated Mr. Cybulski into the

8    New York State Medicaid program.

9            Now, that's something that shouldn't have happened.

10   It's a clear example, your Honor, of a prejudice of something

11   that maybe shouldn't have happened but that did.  The argument

12   that I read in the papers was, this is the office of Medicaid.

13   Can you imagine what the jury will sit there and think when

14   they're listening to this?  I think, for that and for other

15   reasons that I of course state in my motion, I think there are

16   a lot of reasons that Mr. Cybulski will be lumped, for lack of

17   a better term, into this conspiracy, something that he wasn't a

18   part of.  And I think it's going to be very clear that of all

19   the evidence against him, evidence against him is a very, very

20   small part of the total proof.

21           That's all I'd like to say about that.

22           THE COURT:  Thank you very much.

23           I am interested in what you say about your experience

24   with the Medicaid office, but I don't think comparing that to

25   jurors is very fair to jurors.  At least my experience with

1    bureaucrats is, they have obstinacy all their own that everyday

2    jurors, thank God, do not possess.

3         And getting really more to the point, while of course,

4    there are cases where a severance should be granted, and I've

5    done that on occasion, my own experience, over 20 years now on

6    the bench, is that when you have someone who is not the subject

7    of a lot of the evidence because they're charged either with

8    fewer charges or just one aspect of a charge or whatever, that

9    in fact it almost always redounds to their benefit, not to

10   their detriment, and that the jury views them as kind of small

11   fry or outsiders or add-ons and often you see acquittals in

12   those situations.

13        So, it's not by any means clear to me that the fear

14   that is expressed in these situations about someone being

15   lumped in with the others in charges that they're not charged

16   with, in fact, is the way that juries think.  I actually think,

17   if anything, it cuts the other way.

18        In any event, for basically the reasons stated by

19   government, the motion for a severance is denied.

20        Now, by the way, both parties that have filed motions

21   have asked if they can incorporate the motions of the other

22   party; and that, of course, is fine with the Court.  So, any

23   motion made by any counsel here will be deemed to have been

24   made by all counsel unless it either on its face is very

25   particular to one defendant, as this particular motion is, or

1     some attorney tells me they don't want to be joined in.

2     Otherwise, I'll assume that all the motions are joined in by

3     all defendants.

4                MS. LEWIS:  Your Honor, can I just ask one question in

5     that regard?  I just wanted to point out that in the motions on

6     behalf of Mr. Jakacki, we had mentioned we would want to join

7     in motions that inure to our benefit, but specifically with

8     severance at this time we weren't prepared to make that

9     decision.

10               THE COURT:  If you wanted a severance, now is the time

11    to do it; and you didn't move for a severance, so that has been

12    waived.  That's a different question.  If to the extent you

13    join in the motion he made, I'm denying the motion for him and

14    I am denying it for you.  And I don't see what the argument

15    would be for you in any event, but if you had a separate motion

16    on separate grounds, that should have been filed before today.

17    There's no reason that motion shouldn't have been made by

18    today.

19               MS. LEWIS:  All right.  Thank you.

20               THE COURT:  The record should reflect that

21    Mr. Perlmutter --

22               MR. PERLMUTTER:  Judge, I apologize, I had this down

23    for 4:30 and I am on CJA duty all day, so I have been down

24    there.

25               THE COURT:  Well, just to bring you up to speed, we've

G2PKJAKC                        CONFERENCE

1    been dealing with things that don't affect your client.

2              MR. PERLMUTTER:  I apologize nonetheless, and I am

3    sorry.

4              THE COURT:  All right, no problem.

5              Actually, while we're on the subject that just came

6    up, both sides asked for leave to file further motions.  The

7    answer to that is no, barring exceptional circumstances.  We

8    set this motion calendar so that everyone would give me your

9    motions.

10             Now, if there's a motion that you couldn't possibly

11   have known about because something comes up three weeks from

12   now that was unforeseen and gives rise to a motion, of course,

13   on that kind of motion I'll allow it.  But just taking the

14   example at hand, severance, that was a motion that could have

15   been made and should have been made and I didn't make an

16   exception; I said all motions should be filed.  And so there is

17   no permission granted to file additional motions.  If someone

18   believes they have a basis to file an additional motion based

19   on exceptional or unforeseen circumstances, you can jointly

20   convene a conference, call with the Court, and we'll determine

21   whether to allow you to file that motion or not.

22             Now, turning to the bill of particulars:  First, with

23   respect to the particulars sought by defendant Cybulski, which

24   are set forth on page 25 of his omnibus motion, with respect to

25   Count One, he asked first for the date that Cybulski is alleged

1    to have become a participant in the conspiracy.  That is

2    granted, and that will also have to be provided for all, each

3    and every one of the defendants.

4            He then asks for the names of who are the persons

5    referenced as in that count as "others known and unknown."

6    That will have to be provided as well.

7            He then asks for the dates Cybulski is alleged to have

8    ceased conspiring, if any.  And if there is such a date, that

9    will have to be provided and similarly for each of the

10   defendants.

11           He then asks for the specific dates and pill

12   quantities and recipient names whereby Cybulski is alleged to

13   have "regularly visited MW&W with multiple prescriptions,

14   written in others' names."  That is denied.  That's the level

15   of evidentiary detail that a bill of particulars is not the

16   proper vehicle for.

17           Along the same lines, he's asking the same request

18   with respect to the allegation that Mr. Cybulski "obtained

19   oxycodone from Wieckowski or those acting at her direction even

20   though Cybulski did not have any prescriptions."  That is

21   denied.

22           And, finally, all the same requests with respect to

23   the allegation that Cybulski obtained oxycodone in his own name

24   on occasions other than those set forth in the 2013 DEA audit,

25   that is denied.

G2PKJAKC                    CONFERENCE

1          Turning to the bill of particulars --

2          MR. KAMARAJU:  Your Honor, I'm sorry, may I ask one

3   question?

4          THE COURT:  Yes.

5          MR. KAMARAJU:  With respect to the first set of

6   particulars that were granted, the individual referenced as

7   others known and unknown.

8          THE COURT:  Yes.

9          MR. KAMARAJU:  Obviously, as the case proceeds to

10  trial, the government would continue to investigate.  If

11  additional individuals become known, at that time, as

12  coconspirators, would we be able to just supplement the bills

13  of particulars to the defendants?

14         THE COURT:  Yes.  But you're going to have to make a

15  showing, if defendants object, as to why you couldn't have

16  added those names earlier.  And to put it another way, it's

17  really critical, from the defendants' standpoint, to know who

18  is being claimed to be their coconspirators because it invokes

19  the hearsay exception, which is often a very major factor in

20  cases like this.  So if a week before trial you add a name and

21  they object, you're going to have to make one hell of a showing

22  to me as to why you didn't know sooner than a week before trial

23  that this guy was a, quote, coconspirator.

24         But with that caveat, yes, there may be names that you

25  won't be in a position to add until later than the date we are

G2PKJAKC                    CONFERENCE

1   about to set.  The date I'm about to set for the bill of

2   particulars will probably be in a week but we'll get to that in

3   a second.

4          With respect to the bill of particulars requested by

5   counsel for defendant Marcin Jakacki, of course, all the

6   particulars I did grant are applied to all the defendants but

7   now there's a request for all locations encompassed by the term

8   "elsewhere."  That is denied.  There's a request for names of

9   individuals, "by name the individuals denoted as 'others known

10  and unknown.'"  I've already granted that, and it's granted

11  again.

12         With respect to paragraph 2 of Count One, "identify by

13  name the others to whom the pills were allegedly distributed,"

14  I want to hear about that in a minute but I'm going to put that

15  one on hold for a second.

16         With respect to Count One, paragraph 3, the first

17  request is for the date that Mr. Jakacki became a member of the

18  conspiracy.  That's already been granted.  The second is for

19  the specific dates and amounts of each of the cash payments

20  alleged to have been collected.  That's denied.

21         With respect to paragraph 9 of Count One, the source

22  of the allegation that MW&W was the leading purchaser of

23  oxycodone tablets in its zip code between 2010 and 2012.  Now,

24  that is not a proper bill of particulars request, so it is

25  denied under an application for a bill of particulars; however,

1    I think it would be appropriate for the government to supply

2    that information.

3               Any problem with that?

4               MR. KAMARAJU:  No, your Honor, we can supply that.

5               THE COURT:  Okay, good.

6               And then same thing, the name and location of the

7    second highest.  That's really less important.  If the

8    government has that and they want to supply it, I encourage

9    them to do it.  From the technical standpoint of a bill of

10   particulars, however, it's denied.

11              MR. KAMARAJU:  Just your Honor knows, I think what the

12   government would supply is, there's a system known as ARCOS

13   which contains this data and I believe there's a memorandum

14   that summarizes that, Judge.  So we'll produce that.

15              THE COURT:  Great, terrific.

16              With respect to Count One, paragraph 11, "Please

17   identify the fraudulent prescriptions," denied.

18              "Please identify the names of the physicians and

19   locations of the physician offices for which the prescription

20   forms were stolen."  That is another one I want to hear a

21   little bit more about in a second.

22              With respect to Count One paragraph 12, "Please

23   identify the times, dates, locations and individuals involved

24   and the times that the prescriptions were made out in false

25   names," that's denied.

1            And also "the times, dates, locations and individuals

2     involved and the times that Wieckowski sold oxycodone to

3     individuals without prescriptions," that is denied.

4            With respect to Count One, paragraph 13 -- well, let

5     me put it this way:  I think you see, from my rulings already,

6     how I will decide all the rest.  We can go through it now if

7     you want if you have any question about any of them but let's

8     talk about the two that I wanted to hear argument on.

9            The first one was, with respect to Count One,

10    paragraph 2, "Please identify by name the others to whom the

11    pills were allegedly distributed," are we talking here about

12    many people, a few people?  What are we talking about?

13            MR. KAMARAJU:  I think that the government has

14    identified its -- it would be under ten people that the

15    government has been able to specifically as identify having

16    received pills.  We suspect there are more but in terms of

17    names, it would be under ten.

18            THE COURT:  I think those should be identified.  I'm

19    going to grant that request, with the caveat that there you can

20    supplement right up to two weeks before trial.

21            Similarly, with respect to Count One, paragraph 11,

22    "the names of the physicians and the location of the physician

23    offices around New York City for which prescription forms were

24    stolen," what are we talking about there, in terms of number?

25            MR. KAMARAJU:  At this point, I believe the

1   government's identified, again, I would say under ten.

2            THE COURT:  Okay.  So same ruling:  It's granted but

3   you are free to supplement up to two weeks before trial.

4            MR. KAMARAJU:  Okay.

5            THE COURT:  Now, I think if you look at all the

6   remaining ones, because this is, and quite fairly so, a

7   detailed list going on for quite a few pages but I think my

8   rulings make clear how I would resolve all the others.  If you

9   have any doubts about any one, you can call me jointly and I

10  will give you a ruling over the phone.

11           I think we have disposed of all the motions.  Yes?

12           MS. LEWIS:  There is just one issue that was raised in

13  the motion regarding the bill of particulars, in addition to

14  the particulars themselves, that I think is very important in

15  the context of defining the parameters of the allegations here;

16  and that is, there are a lot of prescriptions that are provided

17  and I had a call together with the government to narrow down

18  what we're talking about here between the beginning of 2011 and

19  June of 2013, and that's the period during which an audit was

20  conducted on the Brooklyn and Queens pharmacies that are the

21  subject of this indictment.

22           What isn't included and what I don't have any guidance

23  as to -- and I did mention this in the motions as well -- is

24  the prescriptions, if any, they allege are fraudulent after the

25  time period of that audit.  And I find it very troubling that

1    we are now in a posture where the government has kindly offered

2    on the one hand to let us know on a rolling basis if they

3    determine that any of these prescriptions from the Queens

4    pharmacy after 2013 are fraudulent but that I don't know when

5    they would provide these, we can't -- it's a moving target, I

6    don't know how we can probably make decisions and prepare for a

7    trial without knowing if they actually do believe that any of

8    those were fraudulent.  And, similarly, they have told us --

9              THE COURT:  So, since the government is providing that

10   information but on a rolling basis, what you want is a cutoff

11   date?

12             MS. LEWIS:  I do, and I want it soon.

13             THE COURT:  Okay.  So what do you suggest as the

14   cutoff date?

15             MS. LEWIS:  I think, given the amount of time it will

16   take us to do this, I think by the end of the month, if they

17   can provide it to us within the next week or so.

18             THE COURT:  Yes.

19             MR. KAMARAJU:  I would just note, for the bill of

20   particular that we just discussed, which were other individuals

21   who received pills, which is going to capture a subset of

22   exactly what Ms. Lewis is talking about, setting a cutoff of

23   two weeks before trial, I would think that that's an

24   appropriate cutoff.

25             THE COURT:  Yes, that's what I think too.  That

1    doesn't mean that you shouldn't give them as much as you can

2    immediately upon identifying it, but the list will not be

3    definitively closed until two weeks before trial.

4              MR. KAMARAJU:  Absolutely.  The minute the government

5    knows -- and what we have just informed the Court, what we had

6    offered to do for those prescriptions -- the minute the

7    government has identified to the government's satisfaction that

8    a prescription is fraudulent, we will produce that exact

9    prescription to defense counsel, so they will have a name in an

10   unredacted form pursuant the protective order.

11             THE COURT:  Right.

12             MS. LEWIS:  I just have one other thing, which is,

13   regarding the prescriptions that are -- or, I'm sorry, the

14   drugs that don't involve a prescription, that are filled

15   without a prescription, we have no guidance at all as to when

16   they allege that that happened.  We just have a number between

17   2011 -- and it's limited again -- between the beginning of 2011

18   and the end of the audit in 2013 in which that audit found that

19   there were 430,000 pills that are not accounted for and, in

20   very vague terms, they say they were ordered, there was a

21   dispensed number, they subtract out any pills that there was a

22   theft or stolen report made as to those pills, and then there's

23   just the remainder of these 430,000, we don't know who's

24   alleged to be involved with filling of these or the providing

25   of these drugs, whether it's our clients, other people that are

1    alleged, how they even allege they're related to their clients,

2    are they on the street, are they in pharmacies.  We don't know

3    anything.  And I would hope we get something more as to what

4    their theory is there or what their allegations are.

5             MR. KAMARAJU:  Well, I think, by definition, the

6    allegation is that there is no identifying information for the

7    pills that were dispensed.  If there were a prescription, I

8    could provide the prescription to defense counsel, but the

9    point is that there are a number of pills that are not

10   accounted for by an audit, by Lilian Jakacki, and that they are

11   not tied to any sort of prescription.  So the government is

12   similarly in the dark with respect to where those pills went.

13   I don't have --

14            THE COURT:  I'm with you and I think if further

15   information is developed, you may want to provide that, but in

16   terms of a bill of particulars, that request is denied.

17            Now, I think the only thing that remains is to set a

18   trial date.  How long a trial are we talking about?  Let me ask

19   the government first.

20            MR. KAMARAJU:  I think the government's case would be,

21   at most, between a week and a half, maybe two weeks.

22            THE COURT:  Is there likely to be a meaningful defense

23   case here?

24            MS. LEWIS:  I think we would say a week would be a

25   reasonable assumption.

1          THE COURT:  Okay.  So I'm going to put aside three

2     weeks, although I think that's going to be more than we need

3     but they will be at least available.

4          So what dates in June and July are counsel not

5     available?

6          MR. PERLMUTTER:  Judge, I am gone pretty much the

7     entire month of May, working on a CJA case out of New York.

8          THE COURT:  Okay.  Then I certainly won't start the

9     trial before June 1st.

10          MR. PERLMUTTER:  That would be great, that would be

11     great.  And hopefully I'll show up then; if you start at 9:00,

12     I'll be here at 9:30 on June 1st.

13          THE COURT:  No, I understand.  So, we would not want

14     to start the trial in early June.

15          MR. PERLMUTTER:  That's exactly that's my main

16     concern, Judge.

17          THE COURT:  Okay.

18          MS. LEWIS:  I had looked into this previously and I

19     apologize but I'm not sure of specific dates, but Joshua

20     Dratel, also in my office, if we did go to trial, would try the

21     case with me.  I believe that he has a trial scheduled for June

22     and so I am not exactly sure where that falls, and I know that

23     doesn't provide very much --

24          THE COURT:  We've got to set the trial date today.  I

25     indicated previously that was one of the things we were going

1    to do today.  But let me hear from final counsel.

2            MR. RAPAWY:  June, your Honor, I have a commitment

3    from June 6th till June 20th and then I have another commitment

4    in July, from July 1st to the 14th, and then I would be free

5    after the week of, I guess, July 18th.

6            THE COURT:  Well, I'm sitting on the Ninth Circuit

7    from July 19th through July 22nd, although the only cases they

8    give me are ones where they're in opposition to the Second

9    Circuit.  But how about starting the trial -- this will be the

10   latest I can give you -- we can start the trial on Wednesday,

11   July 27th, and I'm free for three weeks thereafter, so how

12   about that?  Any problem with that?

13           MR. PERLMUTTER:  Judge, on August 1st.  I'm scheduled

14   to leave with my family for a summer vacation.

15           THE COURT:  Well, then we're going to have to find an

16   earlier date.  First of all, I cannot put this over, consistent

17   with the Speedy Trial Act or anything else, until September

18   because I've got a three-month trial starting in September, so

19   this case is going to be tried before the summer is over.  Now,

20   if you want to take a few minutes and the three of you talk

21   among yourselves, I'm willing, with exception of one or two

22   situations, like the Ninth Circuit, where I have a problem, to

23   try to meet whatever date you guys want to come up with.  It

24   can be June, it can be July, it can be August, but it's not

25   going to be September or thereafter.

1          (Pause)

2          THE COURT:  While you're all talking, I'm just looking

3     at one possibility you might want to consider, which would be

4     starting on July 6th and I don't have to go to the Ninth

5     Circuit until I leave on July 19th, so that's only two weeks,

6     but I'm reasonably confident, actually, this case can be tried

7     in two weeks.

8          MR. PERLMUTTER:  Judge, could we ask for June 20th?

9          THE COURT:  The problem is, the only trip I have

10    scheduled the entire summer, which is to Israel, I leave on the

11    25th and I will be back on July 2nd.

12         MR. PERLMUTTER:  One second, Judge?

13         (Pause)

14         THE COURT:  My courtroom deputy points out that

15    another possibility might be starting August 15th.  I'm

16    confident we'd be through by the beginning of September, when I

17    start that other trial.

18         MR. RAPAWY:  Your Honor, just so you know where we're

19    thinking, I can move my June trial date -- that's a state date

20    that can be moved -- but the July date, I'm just not going to

21    have any flexibility.

22         THE COURT:  Well, I'm not remembering everyone's

23    problems, but how about starting it then sometime early in

24    June?  I can even give you parts of May, if you wanted to go

25    that early.

1          MR. PERLMUTTER:  Judge, from May 10th to May 29th, I'm

2     traveling on a CJA case.

3          THE COURT:  Okay.  So how about starting, say, like

4     June 6th and if we went three weeks -- there's a day here and a

5     day there I'm out of pocket but nothing major.

6          MS. LEWIS:  Unfortunately, I did check with my office,

7     and Mr. Dratel's trial starts 5/31, it's an S.D.N.Y. trial and

8     I think it's scheduled or --

9          THE COURT:  Well, I think we're back to July or

10    August.

11         MR. PERLMUTTER:  Could we do August 22nd?

12         THE COURT:  Let me look at that.  August 22nd?  Yes,

13    we can do August 22nd.

14         MS. LEWIS:  I think that would be fine, your Honor,

15    although I note that there is a bar conference at the end of

16    that week at which we have an interest in attending.

17         THE COURT:  You know, I know that missing that

18    conference is certainly cruel and unusual punishment, but

19    anyway, if things are moving reasonably well, we can take a day

20    off here or there.

21         MS. LEWIS:  It may require just one day off

22    potentially but that's fine.

23         THE COURT:  Okay.  So we're all agreed on August 22nd

24    then.

25         MR. PERLMUTTER:  Yes, Judge.

1           MR. RAPAWY:  Yes.

2           THE COURT:  Great, terrific.

3           Pursuant to Section 3161 of Title 18, I will exclude

4    all time between now and August 22nd, finding that such time is

5    necessary to accommodate the other commitments of counsel and

6    that, for those and other reasons, the best interests of

7    justice in excluding such time substantially outweighs the

8    interests of the public and the defendants in a speedy trial.

9           Anything else we need to take up today?

10          MR. KAMARAJU:  I think your Honor was going to set a

11   schedule for the bill of particulars.

12          THE COURT:  Oh, yes.  So two weeks from today?

13          MR. KAMARAJU:  That would be great, your Honor.

14          THE COURT:  Okay, excellent.

15          All right, anything else we need to take up?

16          MR. PERLMUTTER:  No, your Honor, not from us.

17          THE COURT:  Anything from the defense?

18          MS. LEWIS:  No, your Honor.

19          MR. RAPAWY:  No, your Honor.

20          THE COURT:  Very good.  Thanks very much.

21          MR. KAMARAJU:  Thank you, your Honor.

22          (Adjourned)

23

24

25